811 P.2d 44

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James AUBERT, Defendant–Appellant.**

**No. 18002.**

Court of Appeals of Idaho.

Feb. 27, 1991.

Petition for Review Granted
March 29, 1991.

Review Withdrawn June 19, 1991.

Gregory A. Jones, Kootenai County Public Defender; Tim H. Gresback, Deputy Public Defender, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Jack B. Haycock, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

■ James Aubert was found guilty by a jury of a charge of grand theft upon allegations that he had embezzled $15,571.12 from his employer, Coeur d'Alene Mining Company. I.C. §§ 18–2403(1); 18–2407(1)(b). In a separate civil action, the mining company obtained a default judgment for $163,065 on a complaint alleging that Aubert had misappropriated checks and other property belonging to the company. After the district court pronounced its sentence of six years with a two-year minimum period of incarceration,[1] the court entered an order under I.C. § 19–5304 requiring Aubert to make restitution to Coeur d'Alene Mining for $175,072.92, the total amount of the losses suffered by the com-

---

1. The six-year sentence was later reduced by the court under I.C.R. 35 to an indeterminate period of four years with credit for six months served before amendment of the sentence and without any minimum period of confinement, because the crime had been committed before the effective date of the Unified Sentencing Act, I.C. § 19-2513. No issue is raised in this appeal with respect to Aubert's sentence.

pany.[2] Aubert timely appealed from his judgment of conviction, seeking review of the order for restitution. I.A.R. 11(c)(1); 17(e)(1)(C).[3]

█ The sole issue on appeal is whether the district court legally could order Aubert to make restitution for losses beyond those resulting from the theft for which he was convicted. As explained below, we hold that the restitution order exceeded the court's authority, and we remand the case for entry of an amended order in the amount of $15,571.12.

The relevant facts are as follows. From the latter part of 1984 through 1985, Aubert was employed as an agent for the Coeur d'Alene Mining Company, which owned several mining claims in Shoshone County. In October of 1985, Aubert made an unauthorized deposit of two checks made out to the mining company, into his own personal account. He later withdrew the check proceeds, totaling $15,571.12, but never forwarded these funds to the company. This conduct formed the basis of his conviction for grand theft.

Aubert allegedly also misappropriated numerous other checks totaling $113,-842.18, which the mining company claimed Aubert had obtained using the same scheme that the state proved in the criminal case. In addition, Aubert allegedly took other items of personal property belonging to the company valued at $14,-888.74. Coeur d'Alene Mining filed a civil complaint against Aubert seeking to recover these losses, and obtained a default judgment for $163,065, which included interest. In this criminal prosecution, Coeur d'Alene Mining requested restitution in the amount of $175,072.92, and the district court ordered Aubert to make restitution in that amount. Aubert challenges the restitution order, arguing that the district court exceeded its authority under I.C. § 19–5304

by imposing restitution for losses not resulting from the specific acts for which he was convicted. He also contends that the court's order violated his right to due process under the law.

█ Preliminarily, we note that it is generally recognized that courts of criminal jurisdiction have no power or authority to direct reparations or restitution to a crime victim in the absence of a statutory provision to such effect. ANNOT., *Statutes Providing for Governmental Compensation for Victims of Crimes*, 20 A.L.R.4th 63, § 2[a], p. 67 (1983); A. HARLAND, *Monetary Remedies for the Victims of Crime: Assessing the Role of the Criminal Courts*, 30 U.C.L.A.L.Rev. 52, 57 (1982); *see generally*, 21A AM.JUR.2d *Criminal Law* § 1051, pp. 586–87 (1981); *and* 24 C.J.S. *Criminal Law* § 1771 p. 428 (1989). Where statutory authority to order restitution exists, the decision whether to require restitution is within the trial court's sound discretion. *State v. Bybee*, 115 Idaho 541, 768 P.2d 804 (Ct.App.1989). As with every discretionary decision, however, the exercise of discretion must be within the boundaries governing the available choices and consistent with any legal standards applicable to those choices. *Standards of Appellate Review in State and Federal Courts*, IDAHO APPELLATE HANDBOOK § 3.4 (Idaho Law Foundation, Inc., 2d ed. 1989); *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989).

In the context of the present case, the court's exercise of discretion is controlled by statute. Idaho's restitution statute provides that the court "shall order a defendant found guilty of any crime which results in an economic loss to the victim to make restitution to the victim." I.C. § 19–5304(2). The statute defines "victim" as "a person or entity, named in the com-

---

**2.** Apparently, the civil judgment included amounts for one of the checks included in the embezzlement charge in this criminal proceeding.

**3.** A defendant may, within forty-two days of the entry of an order of restitution, request relief from the restitution order in accordance with the Idaho Rules of Civil Procedure relating to

relief from final orders. I.C. § 19–5304(10). Inasmuch as this statute creates a permissive option ("may ... request"), we do not view it as an impediment or condition precedent to Aubert's choice to appeal directly from the judgment of conviction in order to challenge the legality of the restitutive order.

plaint, information or indictment, who suffers economic loss or injury as the result of the defendant's criminal conduct...." I.C. § 19–5304(1)(e).[4] With regard to the amount of the restitution, § 19–5304(7) provides that the court, "in determining whether to order restitution and the amount of such restitution, shall consider the amount of economic loss sustained by the victim as a result of the offense, the financial resources, needs and earning ability of the defendant, and such other factors as the court deems appropriate." Finally, the court may, with the consent of the parties, "order restitution to the victims for economic loss or injury for crimes in cases or counts of criminal complaints which are not adjudicated or to victims who are not before the court." I.C. § 19–5304(9).[5]

Aubert urges us to adopt the interpretation given the federal restitution act, 18 U.S.C. §§ 3579, 3580 (now 18 U.S.C. §§ 3663, 3664), which authorizes the court to order restitution only for the specific conduct that is the basis for the conviction. *Hughey v. United States*, — U.S. —, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). In *Hughey*, the United States Supreme Court held that, under the federal statutes, a restitution order may encompass only those amounts included in counts to which the defendant pled guilty or on which the defendant was convicted. We find the reasoning of the Court in *Hughey* highly persuasive, although there are some differences between the language of the federal and Idaho restitution statutes. We note also that the district court below did not have the benefit of *Hughey* at the time it entered its restitution order in this case.

■ As noted above, the Idaho restitutionary scheme is predicated upon the defendant being "found guilty of any crime." I.C. § 19–5304(2). The latter term is defined in § 19–5304(1)(b) as "a finding by a court that a defendant has committed a criminal act and shall include an entry of a plea of guilty, an order withholding judgment, suspending sentence, or entry of judgment of conviction for a misdemeanor or felony." The restitutive "economic loss" reflects the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses *"resulting from the criminal conduct."* I.C. § 19–5304(1)(a) (emphasis added). The statute guides the court, in reference to determining the amount of restitution, to consider among other factors the "economic loss sustained by the victim *as a result of the offense."* I.C. § 19–5304(7) (emphasis added). A reasonable reading of I.C. § 19–5304, coupled with the reasoning expressed in *Hughey*, shows that a restitution order must be limited to the crime or counts to which a defendant pled guilty or on which he was convicted.[6] *Accord, Matter of Gardner*, 94 Wash.2d 504, 617 P.2d 1001 (1980) (applying comparable state statute to similar facts). To this extent, therefore, Aubert should not have been required to make restitution for any amount exceeding the theft of $15,571.12, upon which he was convicted, unless—as we next shall discuss—the additional restitution was permissible under the "consent" provision of the statute.

**4.** To qualify for restitution, a claimant must be a victim as that term is used in the statute. 24 C.J.S. *Criminal Law* § 1774(b) p. 431 (1980), *citing State v. West*, 320 N.W.2d 570 (Iowa 1982) *and Montgomery v. State*, 292 Md. 155, 438 A.2d 490 (1981).

**5.** As a general rule, restitution depends on the existence of the crime for which the offender was convicted and a person may not be ordered to pay restitution for a crime for which he was not convicted. 24 C.J.S. *Criminal Law* § 1774(a) p. 431 (1989).

**6.** We note that the legislature has adopted other statutes governing restitution for particular crimes or charges. For example, with regard to

no-account or insufficient funds checks, I.C. § 18–3106(f) permits the court to order restitution "on all checks issued and which are unpaid" as a condition of probation. Another statute, I.C. § 25–1910, permits recovery by the owner of livestock of his losses resulting from theft or destruction of the animals and the amount expended as rewards by any trade association, leading to the arrest and conviction of the defendant. Neither of these statutes seem as limited as I.C. § 19–5304, nor do we intend—by referencing those statutes—that our opinion in this case should apply to any code provision other than I.C. § 19–5304.

As noted, I.C. § 19–5304(9) permits the court "with the consent of the parties" to enter an *order for restitution to victims of crimes* "in cases or counts of criminal complaints which are not adjudicated or to victims who are not before the court." Evidently because the federal restitution statutes do not contain a provision similar to the "consent" provision in § 19–5304(9), the Court in *Hughey* did not address this issue. The clear import of § 19–5304(9) is that a defendant may consent to the entry of an order requiring restitution to the victim of a pending, unadjudicated criminal charge, or to the victim—*i.e.*, person or entity named in a complaint, information or indictment as such, I.C. 19–5304(1)(e)—in another criminal action which has been adjudicated, but who is not the victim in the action before the court in which the restitutionary order will be entered.

In the instant case, the state argues that Aubert "consented" to the entry of the restitutionary amount in favor of the mining company, in excess of the amount proven in the embezzlement prosecution. The state's position is based upon comments made to the court by Aubert and his counsel during the sentencing hearing when the prosecution presented evidence from the mining company to establish the amount of the total loss allegedly resulting from Aubert's misappropriations. Aubert and his counsel had responded to this evidence by representing that Aubert intended to pay the entire loss suffered by the company and that Aubert had no objection to including the amount of the civil judgment in the restitution order.

We are not persuaded by the state's argument. Even if those representations were construed as a consent, the purported consent was not within the framework of the restitution statute. The mining company was not named as a "victim," as that term is defined in the statute, of any criminal conduct by Aubert with respect to its losses above the $15,571.12 alleged and proved in the only criminal action brought against Aubert. There was not pending, nor had there been adjudicated, any criminal charge against Aubert for his misappropriation from the company of the amounts underlying the civil judgment, except for the one check included in the instant prosecution. Because the court's restitutionary authority is limited by the statute, we conclude that a defendant's acquiescence in exceeding that authority is unavailing. *Accord, State v. Eilts*, 94 Wash.2d 489, 617 P.2d 993 (1980). We thus reach our ultimate conclusion in this case that the district court did not properly exercise its discretionary power to order restitution because it exceeded its statutory authority when it ordered Aubert to make restitution in any amount other than for the theft of $15,571.12 for which he was convicted.[7]

■ We deem it appropriate to address one final argument posed by the state. The state contends that Aubert's failure to object to the proposed restitution order during his sentencing hearing constitutes invited error which precludes appellate review of the order. However, the invited error doctrine is subject to certain limitations. We have recognized previously that the invited error doctrine should not be invoked to prevent review of an order entered by a court in violation of its statutory authority. *State v. Griffith*, 110 Idaho 613, 716 P.2d 1385 (Ct.App.1986). *See also, State v. Eilts, supra.* Our conclusion that the restitution order exceeded the court's

7. We note the consequences of obtaining an order for restitution in a criminal case. The order may be recorded as a judgment, affording the victim a process for collection by execution as provided by law for civil judgments. I.C. § 19–5305. This purpose is with little meaning in the instant case, since the mining company already has acquired a civil judgment upon which execution may be obtained. The order could also serve as basis for a collection process as a condition of probation; however, in this case, the court chose to sentence Aubert to the custody of the Board of Correction, rather than placing him on probation. Finally, the restitution order could be implemented as a condition of parole, requiring Aubert to satisfy the civil judgment while he remains in the custody of the Board. I.C. § 20–223(d). The validity of the order in this respect becomes very important, as Aubert should not be required to comply with an order beyond the authority of the court, simply to obtain limited freedom from confinement through parole release.

statutory authority prevents application of the invited error doctrine to this case.

Our disposition in this case renders unnecessary any discussion of Aubert's claim that the restitution order violated his due process rights. The order for restitution in the amount of $175,072.92 is vacated. The case is remanded for entry of an amended order, requiring restitution in the amount of $15,571.12 only.

SWANSTROM and SILAK, JJ., concur.