889 P.2d 1117

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Christopher HARGIS, Defendant– Appellant.**

No. 20976.

Court of Appeals of Idaho.

Feb. 15, 1995.

Sheila P. John, Blaine County Public Defender, Ketchum, for appellant.

Larry EchoHawk, Atty. Gen., and Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent.

LANSING, Judge.

In this appeal we address whether the Idaho statute authorizing the involuntary commitment of the mentally ill, I.C. § 66–329, applies to persons already being held in custody on criminal charges. We hold that the involuntary commitment statute does apply in this circumstance and that the district court in this case erred in preventing compliance with a magistrate's lawful order directing that the defendant be temporarily transferred to a mental health facility to receive necessary treatment pending a commitment hearing. We also hold that it was error for the trial court to order the defendant to pay restitution for crimes that were not the basis of his conviction.

## I. FACTS

In April 1993, Christopher Hargis was arrested and charged with two counts of burglary, I.C. § 18–1401, two counts of grand theft by possession of stolen property, I.C. §§ 18–2403(4), 18–2407(1), and three counts of grand theft by unauthorized transfer of the property of another person, I.C. §§ 18–2403(3), 18–2407(1)(b)(1). Hargis was also accused of being a persistent violator with respect to each of the above charges. I.C. § 19–2514. A public defender was appointed to represent him, and Hargis entered pleas of not guilty to the charges. Hargis, who was unable to post bond, remained in the Blaine County jail pending trial. On May 3, 1994, pursuant to a plea bargain agreement with the State, Hargis pleaded guilty to one count of grand theft by possession of stolen property and one count of grand theft by unauthorized transfer of the property of another person. The remaining charges were dismissed.

A sentencing hearing was scheduled. In late July, counsel for Hargis filed a motion requesting that the court order a psychological evaluation of Hargis for sentencing purposes pursuant to I.C. § 19–2522. The court granted the motion, and the examination was scheduled for September 3, 1993.

On Saturday, August 21, Hargis attempted suicide in his cell by cutting his wrist and forearm with the blade of a dismantled disposable razor. The Blaine County sheriff's department transported Hargis to the emergency room at Wood River Medical Center South Campus for medical treatment. After Hargis's return to the jail later that same day, a physician, Dr. Carl Barbee, completed and signed a certificate stating that he had examined Hargis and in his opinion Hargis was mentally ill, was likely to injure himself or others, was in need of care in a mental hospital and lacked sufficient capacity to make responsible application for such treatment. Dr. Barbee also noted that Hargis had been taking two prescribed medications in an attempt to control his mental condition while in jail but had nonetheless made the suicide attempt.

Sheriff's office personnel promptly contacted the Blaine County prosecutor to request that he do the "paperwork" needed to transport Hargis to either a private hospital or to State Hospital South at Blackfoot for treatment. The prosecutor, however, deemed such hospitalization unnecessary and advised the sheriff's office to keep Hargis at the jail.

On Tuesday, August 24, Hargis phoned his attorney from the jail and told her that he had attempted suicide the previous Saturday. Defense counsel contacted the prosecutor in an attempt to have Hargis transferred to a medical facility, but the prosecutor again resisted. The defense attorney then advised Hargis's fiancee, Cecilia Reichardt, on the procedures for filing an application for involuntary civil commitment of Hargis pursuant to I.C. § 66–329. Ms. Reichardt, with the assistance of Hargis's attorney, attempted to file the application before the district court but was informed by court personnel that the application should be brought before a magistrate. The *ex parte* petition was then filed in the magistrate's division on August 25.

On August 26 a hearing was conducted on Ms. Reichardt's request for appointment of a designated examiner to make a second examination of Hargis pursuant to I.C. § 66–329(d). The Blaine County prosecutor appeared at this hearing and expressed a number of objections to appointment of another examiner and to hospitalization of Hargis. He first indicated that as the county's attorney, he viewed it to be his responsibility "to look after the funds, since the county has the responsibility of paying for these procedures." He noted that if Hargis were unable to pay the costs associated with the commitment proceedings, by terms of I.C. § 66–327, Blaine County would ultimately be responsible for these costs. The prosecutor also indicated that in light of the fact that Hargis had pleaded guilty and was facing the possibility of a significant prison sentence, the risk of escape if Hargis were transferred to a medical facility was a matter of overriding concern.

At the conclusion of the August 26 hearing, the magistrate found that the certificate filed by Dr. Barbee, a designated examiner, conformed with the requirements of I.C. § 66–329. The magistrate ordered, pursuant to I.C. § 66–329(d), that Hargis be examined at the county jail by a second designated examiner, Scott Williams, who was recommended by the prosecutor. Mr. Williams completed

his examination and filed a certificate the next day, August 27. Mr. Williams' findings corresponded with those of Dr. Barbee: that Hargis was mentally ill, presented a risk of injury to himself or others, and needed treatment in a mental hospital.

A second hearing was held before the magistrate on August 31, at which Ms. Reichardt requested, pursuant to I.C. § 66–329(e),[1] that Hargis be transported to a mental health facility to undergo treatment while awaiting the final evidentiary hearing under I.C. § 66–329(j) on the involuntary commitment application. A deputy prosecutor appeared at this second hearing and again opposed hospitalization of Hargis due to the expense that would be incurred by the county and concerns about adequate security at the private hospital to which Hargis would be sent.[2] The magistrate, recognizing that Hargis was a criminal defendant who was being held in the county jail in lieu of bond and who was subject to the jurisdiction of the district court in the criminal proceeding, questioned whether he (the magistrate) possessed authority to order Hargis's transfer from the jail to a mental health facility without the district court's concurrence. Therefore, at the close of the August 31 hearing the magistrate entered an order for Hargis's transport to a private hospital, but made his order contingent upon the district judge's "furlough" of Hargis. The order provided:

NOW THEREFORE IT IS HEREBY ORDERED that, contingent upon the Honorable [District] Judge James May's furlough of the Defendant, the proposed patient shall be admitted to Canyon View Hospital in Twin Falls, Idaho, or such other facility as may be designated by Judge May, pursuant to 66–317(g), immediately or as soon as transportation can be made available and that he shall remain at Canyon View Hospital to receive necessary treatment pending the hospitalization

hearing currently scheduled for September 7, 1993, at 11:00 a.m.

Later in the day on August 31, a hearing was held before the district court in the instant criminal proceeding on Hargis's motion for "a furlough from incarceration so that he could be admitted to a mental health facility in accordance with the magistrate's order." At the hearing the district court held that the involuntary commitment statutes do not apply to persons who are in custody at a county jail. The district court therefore refused to allow Hargis's release from jail to effectuate the magistrate's order authorizing Hargis's hospitalization. Instead, the district court entered an order supplementing its previous order appointing Dr. Worst to examine Hargis on September 3 for sentencing purposes. The court's supplemental order directed Dr. Worst to also conduct an examination as authorized by I.C. §§ 18–210 and 18–211 to determine whether Hargis possessed capacity to understand the proceedings against him and to assist in his own defense.

From this point forward, the record on appeal is sketchy. Subsequent orders of the district court indicate that Hargis was examined by Dr. Worst on September 3, 1993. Neither the presentence investigator's report nor Dr. Worst's report appear in the record. On October 4, 1993, the district court entered a judgment of conviction and imposed a unified ten-year sentence with a five-year determinate term for grand theft by possession of stolen property, and a consecutive five-year indeterminate term of imprisonment for the charge of grand theft by the unauthorized transfer of the property of another person. The judgment also ordered Hargis to pay restitution to victims for the stolen property referenced in those counts of the information

---

1. I.C. § 66–329(e) states:

If the designated examiner's certificate states a belief that the proposed patient is mentally ill and either likely to injure himself or others or is gravely disabled, the judge of such court shall issue an order authorizing any health officer, peace officer, or director of a facility to take the proposed patient to a facility in the community in which the proposed patient is residing or to the nearest facility to await the hearing and for good cause may authorize

treatment during such period subject to the provisions of section 66–346(a)(4), Idaho Code. Under no circumstances shall the proposed patient be detained in a nonmedical unit used for the detention of individuals charged with or convicted of penal offenses.

2. All parties apparently assumed or agreed that if interim treatment for Hargis were ordered, it would be provided at Canyon View Hospital in Twin Falls.

**730**

which the State agreed to dismiss pursuant to the plea agreement.

Hargis asserts on this appeal from his criminal conviction that the district court erred in holding that Idaho's civil commitment statutes did not apply to Hargis because he was confined in jail. He also contends that his rights under the Eighth and Fourteenth Amendments to the United States Constitution and under Art. I, §§ 6 and 13 of the Idaho Constitution were violated when he was denied access to necessary medical care. Hargis also claims that the district court erred in ordering him to make restitution to an individual and an insurance company who were not victims in the crimes to which Hargis pleaded guilty.

## II.  ANALYSIS

### A.  RESTITUTION

█ We address first Hargis's contention that the district court exceeded its authority by ordering that Hargis make restitution to persons who were not victims in the offenses for which Hargis was convicted.

The charges against Hargis originally included counts for burglary and grand theft relating to theft of property from the home of Joy Kreitler. Those charges were dismissed, however, when Hargis agreed to plead guilty to other charges stemming from unrelated thefts. In the judgment of conviction, the district court ordered that Hargis pay restitution in the amount of $3,760.70 to Ms. Kreitler and her insurer. Idaho Code Section 19–5304(9) authorizes a trial court to order restitution to victims of crimes that were charged but not adjudicated, but only if the defendant consents. *See State v. Aubert,* 119 Idaho 868, 811 P.2d 44 (Ct.App.1991). The State concedes on appeal that because Ms. Kreitler was not a victim in the crimes for which Hargis was convicted, and because Hargis did not consent to pay such restitution through a plea agreement or otherwise, this order of restitution was entered in error. Accordingly, the restitution order is reversed.

### B.  CIVIL COMMITMENT STATUTES

We next consider Hargis's claim that the district court erred in holding that the civil commitment procedures authorized by I.C. § 66–329 are inapplicable to persons who are incarcerated in a county jail.

█ We begin by considering the State's argument that all issues relating to Hargis's alleged need for medical treatment while jailed in Blaine County are moot because Hargis is now in the custody of the State Board of Correction. The State is correct in observing that no appellate decision from this Court can remedy any past harm to Hargis allegedly arising from withheld mental health treatment. This aspect of the appeal is therefore moot. However, where issues of substantial public interest are presented, and where the same type of controversy is susceptible of recurrence yet evading review, our appellate courts have addressed the issues presented even though the appeal is technically moot. *Johnson v. Bonner County School District No. 42,* 126 Idaho 490, 887 P.2d 35 (1994); *Ellibee v. Ellibee,* 121 Idaho 501, 503, 826 P.2d 462, 464 (1992); *Robinson v. Bodily,* 97 Idaho 199, 200, 541 P.2d 623, 624 (1975).

Hargis's appeal presents a question as to whether the statutory procedures for involuntary commitment of the mentally ill, I.C. § 66–329, apply to mentally ill jail inmates and prejudgment detainees. This issue of statutory interpretation is likely to arise in future cases and is a matter of substantial public importance. Because periods of confinement in county jails are generally of short duration, this is an issue that also tends to evade appellate review. *See Mallery v. Lewis,* 106 Idaho 227, 234, 678 P.2d 19, 26 (1983) *citing Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Therefore, we are persuaded that this issue should be addressed for the guidance of our trial courts notwithstanding its mootness. *See Bradshaw v. State,* 120 Idaho 429, 432, 816 P.2d 986, 989 (1991).

The State also contends that this Court should not address the applicability of I.C. § 66–329 to Hargis because this appeal was taken from the judgment of conviction in the criminal case and not from the magistrate's

order in the civil commitment action. According to the State, Hargis was aggrieved not by the district court's refusal of a furlough, but by the magistrate's order, which conditioned Hargis's hospitalization upon his obtaining a furlough in the criminal case. The State argues that Ms. Reichardt, the applicant in the commitment proceeding, should have appealed from the magistrate's order, and Hargis, as the criminal defendant who was denied medical care, has no right of appeal. We disagree. The legal ruling that is challenged by this appeal is the holding that the statutory mechanism for the hospitalization and commitment of mentally ill persons established by I.C. § 66–329 does not extend to those who are in jail and that Hargis therefore would not be hospitalized pursuant to I.C. § 66–329(e). That determination was made by the district court in the criminal action. If the magistrate court erred in conditioning its order on another court's approval, the fact that such error occurred in the civil proceeding does not preclude Hargis from challenging by appeal separate alleged error in the criminal case.

█ We thus reach the substantive issue, namely whether I.C. § 66–329 applies to persons already legally held in custody in county jail as convicted inmates or prejudgment detainees. That section establishes procedures by which persons may be involuntarily committed to the custody of the director of the Department of Health and Welfare upon proof that (1) they are mentally ill, and (2) because of such mental illness they are likely to injure themselves or others, or they are gravely disabled due to mental illness. The statute also provides for temporary admission of a proposed patient into a mental health facility while he or she is awaiting the commitment hearing. I.C. § 66–329(e).

We find no language in that statute or related statutes that makes Section 66–329 inapplicable to jail inmates or pretrial detainees. The Idaho Code chapter in which Section 66–329 appears, Title 66, Chapter 3 (entitled Hospitalization of Mentally Ill) exempts only one class of persons from the statutory commitment procedures—those in the custody of the Idaho Board of Correction. Section 66–335 provides a separate means by which those in the Board of Correction's custody may be placed in a mental health facility. That statute states, "Mentally ill convicts may be received into said facilities in accordance with rules and regulations adopted by the board of health and welfare acting in conjunction with the state board of correction." This statute plainly refers to persons who have been convicted and sentenced to the Board of Correction's custody. It does not exempt from the Section 66–329 procedures county jail inmates and prejudgment detainees.

We note that there is another avenue for commitment of prejudgment detainees. Under I.C. § 18–212(2), if the court in which a criminal case is pending determines that, as a result of mental disease or defect, the defendant lacks the capacity to understand the proceedings or to assist in his own defense, the court must commit the defendant to the custody of the director of the Department of Health and Welfare for care and treatment at an appropriate facility. This statute is limited in application, however, to those defendants whose fitness to participate in the criminal proceedings has been drawn into question. Therefore, we conclude that Section 18–212 provides only an alternative procedure, not the sole procedure to the exclusion of I.C. § 66–329, for obtaining a commitment to a mental health facility of someone who is in the custody of a county sheriff.

The State argues that I.C. § 66–329 should not apply to persons in Hargis's circumstance, but it points to no statutory provisions or other authority that supports its position. Rather, the State advances policy arguments that would be more appropriately addressed to the legislature.

Finding nothing in I.C. § 66–329 or other statutes indicating that the legislature intended to exclude detainees in county jails from the reach of Section 66–329, we conclude that the district court erred in holding that procedures under this statute were inapplicable to Hargis.

Much of the complexity of this case arose because the civil commitment proceedings were assigned to a magistrate, while the criminal action was pending in the district

court. Civil commitment cases were evidently assigned to magistrates by the district judges of the Fifth Judicial District, as authorized by I.R.C.P. 82(c)(1).[3] The magistrate who ordered Hargis's transport to a mental health treatment facility obviously recognized the mandatory language of I.C. § 66–329(e) which requires that the proposed patient be delivered to a treatment facility when specified criteria are met, but the magistrate was also concerned that Hargis was a presentence detainee under the district court's jurisdiction. The magistrate resolved this tension between his own authority in the commitment proceeding and the district court's jurisdiction in the criminal action by making his transfer order contingent on the district court's approval of a furlough for Hargis. Although the magistrate's desire to avoid a jurisdictional conflict with another court is understandable, the inclusion of such a condition in the transfer order was inappropriate. It was within the magistrate's authority to order Hargis's transfer to a mental health facility once the prerequisites of I.C. § 66–329(e) had been satisfied. Absent an appeal from the magistrate's rulings, the district court had no role to play in the civil commitment proceedings. Therefore, the district court here should not have prevented compliance with the magistrate's order for Hargis's temporary hospitalization.

This is not to say, however, that security risks must or should be disregarded when proceedings are initiated for commitment of persons held in a jail. If the county itself is not the applicant requesting the commitment, the county is free to file a motion to intervene as an interested party in the commitment proceeding and to express to the court its view on the security needs. If the court ultimately orders involuntary commitment of the proposed patient to the custody of the director of the Department of Health and Welfare, the escape risk is one of the factors to be considered by the director in determining the facility in which the patient will be placed. Options available to the director include the Idaho security medical facility operated by the State Board of Correction, I.C. § 66–1304(e), provided the patient meets the criteria of I.C. § 66–1305. When interim care at a mental health facility is ordered under I.C. § 66–329(e) pending the commitment hearing, security risks may also be considered in selection of the mental health facility. We deem the directive of Section 66–329(e) that the court shall authorize the patient's delivery to "a facility in the community in which the proposed patient is residing or to the nearest facility ..." to mean the nearest *appropriate* facility, taking into consideration all of the circumstances, including both the patient's needs and security concerns.

In summary, we conclude that Idaho's civil commitment statute, I.C. § 66–329, may be invoked to obtain involuntary commitment of a mentally ill individual who is in county custody. In districts where such proceedings have been assigned to magistrates, the magistrate holds exclusive authority to render decisions in the commitment proceedings unless and until an appeal is properly taken, notwithstanding that the proposed patient is also a defendant in a criminal action pending before the district court.[4]

In addition to asserting that the district court erroneously declined to effectuate the magistrate's order for civil commitment under I.C. § 66–329, Hargis contends that the county's failure to provide necessary mental health treatment constituted a violation of his right to be free from cruel and unusual punishment and his right to due process under the Eighth and Fourteenth Amendments to the United States Constitution, as well as a

---

**3.** This situation where both a magistrate and a district court judge contemporaneously have jurisdiction over the same individual in separate proceedings can be avoided. Although I.R.C.P. 82(c)(1)(A) authorizes assignment of civil commitment matters to magistrates, it does not prohibit district judges from retaining some or all such cases. The district judges in a district can direct that all proceedings for civil commitment of individuals who are then in county custody be assigned to the district judge handling the criminal proceedings.

**4.** On appeal Hargis requests an injunction against the Blaine County sheriff and the Blaine County prosecutor compelling them to provide adequate mental health treatment for jail inmates. However, this request is not properly presented inasmuch as the matter before us is a criminal case, not a civil action for injunctive relief, and no claim for an injunction was made to the trial court. Therefore, the claim for injunctive relief, raised for the first time on appeal, will not be entertained.

violation of similar rights under Art. I, §§ 6 and 13 of the Idaho Constitution. These claims, like the statutory claim, are moot. We have elected to address the issue of application of I.C. § 66–329 in order to resolve a question of statutory interpretation and provide guidance to our trial courts for future cases. No similar purpose would be served by addressing Hargis's constitutional claims, which turn upon facts peculiar to his individual case. Therefore, because of the mootness of the issues, we will not consider Hargis's contentions that his constitutional rights were violated.

### III. CONCLUSION

That portion of the judgment of conviction ordering Hargis to pay restitution to Joy Kreitler and her insurer is reversed. We conclude the district court was in error in determining that I.C. § 66–329 does not apply to individuals confined in a county jail. The district court's order disallowing Hargis's temporary hospitalization is therefore reversed. Because of the mootness of this issue, however, remand for further proceedings is unnecessary.

No other challenges having been raised with respect to the judgment of conviction and sentences, they are affirmed except for the restitution order, as noted above.

WALTERS, C.J., and PERRY, J., concur.