38 P.3d 1275

**STATE of Idaho, Plaintiff–Respondent,**

v.

**William McKEETH, Defendant–Appellant.**

No. 26539.

Court of Appeals of Idaho.

July 12, 2001.

Rehearing Denied Oct. 18, 2001.

Review Denied Jan. 28, 2002.

Nevin, Herzfelt, Benjamin & McKay, Dennis A. Benjamin (argued), Boise, for appellant.

Hon. Alan G. ˙Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General (argued), Boise, for respondent.

PERRY, Judge.

William McKeeth appeals from his judgments of conviction and sentences for six counts of sexual exploitation by a medical care provider. McKeeth also appeals from the restitution order. We affirm in part, vacate in part, and reverse in part.

## I.

## BACKGROUND

On August 24, 1999, McKeeth, a licensed professional counselor, was charged with three counts of sexual exploitation by a medical care provider (Counts I–III). I.C. § 18–919. On September 16, 1999, the complaint was amended to include an additional three counts of sexual exploitation by a medical care provider (Counts IV–VI). The six counts stemmed from allegations that McKeeth had sexual contact with six female patients.

On January 10, 2000, a stipulation and consent order was finalized between McKeeth and the Idaho State Counselor Licensing Board (ISCLB). Pursuant to the stipulation, the ISCLB agreed not to proceed with formal disciplinary action regarding allegations identical to those in the amended criminal complaint and McKeeth agreed to "the imposition of discipline" against his professional license. Specifically, McKeeth agreed to: (1) a five-year suspension of his professional license; (2) not practice professional counseling in Idaho; (3) pay "an ad-

ministrative fine" of $3000;[1] (4) pay investigative costs and attorney fees in the amount of $2,604; and (5) submit to counseling with a licensed mental health care provider. In addition, the order also delineated the requirements for reinstatement of McKeeth's professional license after the five-year period.

In his criminal case, McKeeth filed a motion to declare I.C. § 18–919 unconstitutional, a motion to dismiss for double jeopardy, and a motion to dismiss Counts I–III for violation of his right to a speedy trial. Following a hearing held on March 22, 2000, the district court denied these motions. McKeeth entered an I.C.R. 11 plea of guilty to the charged offenses, reserving his right to appeal the district court's denial of all pre-trial motions. The district court sentenced McKeeth to a one-year term of incarceration for each of the six counts of sexual exploitation by a medical care provider. The district court suspended all the sentences except for the sentence imposed for Count IV and imposed concurrent two-year terms of probation to run consecutive to the remaining one-year term of incarceration. Following a restitution hearing, the district court ordered McKeeth to pay $19,450.29 in restitution to the victims in this case. McKeeth appeals.

## II.

## ANALYSIS

### A. Double Jeopardy

McKeeth argues that the district court erred in denying his motion to dismiss the charges against him on the ground that his criminal prosecution violated his constitutional right against double jeopardy. McKeeth contends that he was criminally punished for double jeopardy purposes when the ISCLB imposed a fine of $3000[2] and that his subsequent criminal prosecution constituted a second punishment in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and Article I, Section 13 of the Idaho Constitution.

### 1. Federal Constitution

■ The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Double Jeopardy Clause protects against three abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple criminal punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 441, 109 S.Ct. 1892, 1898, 104 L.Ed.2d 487, 497 (1989); *State v. Talavera,* 127 Idaho 700, 703, 905 P.2d 633, 636 (1995). It is the third of these protections at issue in the instant case. We must determine whether the sanctions imposed by the ISCLB constituted a criminal punishment within the meaning of the Double Jeopardy Clause so as to foreclose McKeeth's subsequent criminal prosecution based upon the identical allegations.

■ A determination of whether a particular punishment is criminal or civil is a two-step process. This Court must first inquire whether the legislature indicated either expressly or impliedly a preference that the punishment be labeled as criminal or civil. *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450, 459 (1997); *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749 (1980); *see also Berglund v. Potlatch Corp.,* 129 Idaho 752, 756, 932 P.2d 875, 879 (1996). Even in those cases where the legislature has indicated an intention to establish a civil penalty, this Court must next inquire whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty. *Hudson,* 522 U.S. at 99, 118 S.Ct. at 493, 139 L.Ed.2d at 459; *see also Berglund,* 129 Idaho at 757, 932 P.2d at 880. In making this later inquiry, the following factors provide useful guideposts: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3)

---

1. One-half of the fine was stayed. The stay was conditioned upon McKeeth's compliance with the terms of the stipulated order.

2. McKeeth does not allege that the other sanctions imposed by the ISCLB constituted criminal punishment.

whether it comes into play only on a finding of *scienter;* (4) whether the behavior to which it applies is already a crime; (5) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purposes assigned. *Hudson,* 522 U.S. at 99–100, 118 S.Ct. at 493, 139 L.Ed.2d at 459; *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644, 661 (1963). These factors must be considered in relation to the statute on its face, and no single factor is dispositive. *See Hudson,* 522 U.S. at 100–01, 118 S.Ct. at 493–94, 139 L.Ed.2d at 459–60; *Kennedy,* 372 U.S. at 169, 83 S.Ct. at 568, 9 L.Ed.2d at 661. Only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. *Hudson,* 522 U.S. at 100, 118 S.Ct. at 493, 139 L.Ed.2d at 459; *Kennedy,* 372 U.S. at 169, 83 S.Ct. at 568, 9 L.Ed.2d at 661.

■ Our first inquiry is whether the legislature indicated either expressly or impliedly a preference that the fine of $3000 imposed upon McKeeth be labeled as criminal or civil. The power to regulate the practice of licensed counselors and licensed professional counselors in the state of Idaho is conferred upon the ISCLB. I.C. §§ 54–3404, 54–3407. The regulatory powers conferred upon the ISCLB are administered by the Bureau of Occupational Licenses (the Bureau). I.C. §§ 54–3413, 54–2414, 67–2602.[3] By statute, the laws governing the professional counselors are administered by the Bureau. I.C. § 54–3413. As a result, the Bureau is statutorily authorized to "formulate rules for adoption by the boards establishing a schedule of *civil fines*" of $1,000 or less for violations of the law governing professional counselors. I.C. § 67–2609(7) (emphasis added). The Bureau is also instructed that any "*civil fine* collected by a board . . . shall be deposited in the bureau of occupational licensing account." *Id.* Thus, the legislature express-

ly indicated a preference that any disciplinary fine adopted by a state agency pursuant to I.C. § 67–2609(7) would be civil in nature.

Pursuant to authority delegated by I.C. § 67–2609(7), the ISCLB promulgated a rule stating that the "disciplinary procedures of the Bureau of Occupational Licenses are the disciplinary procedures of the Counselor Licensing Board." IDAPA 24.15.01.500.01. In addition, the ISCLB adopted a fine schedule which provided for the imposition of "a *civil fine* not to exceed one thousand dollars ($1000) upon a licensed counselor for each violation of Section 54–3407, Idaho Code." IDAPA 24.15.01.500.02 (emphasis added). Because the fine imposed by the ISCLB in the instant case was authorized by I.C. § 67–2609(7), this Court concludes that the legislature intended that the fine would be civil in nature.

Nevertheless, we must also inquire whether the statutory scheme governing the fine imposed upon McKeeth was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty. First, the fine imposed by the ISCLB does not involve "an affirmative disability or restraint" as that term is normally understood. *See Hudson,* 522 U.S. at 104, 118 S.Ct. at 496, 139 L.Ed.2d at 462. Second, money penalties have not historically been viewed as punishment. *Hudson,* 522 U.S. at 104, 118 S.Ct. at 495, 139 L.Ed.2d at 462. The "payment of fixed or variable sums of money [is a] sanction[ ] which has been recognized as enforceable by civil proceedings since the original revenue law of 1789." *Helvering v. Mitchell,* 303 U.S. 391, 400, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938); *see also Hudson,* 522 U.S. at 104, 118 S.Ct. at 496, 139 L.Ed.2d at 462.

Third, the stipulation provided that McKeeth had violated certain provisions of the American Counseling Association (ACA) Code of Ethics, which had been adopted by the ISCLB. *See* IDAPA 24.15.01.360. Provision A.7.a of the ACA Code of Ethics provides that counselors "do not have any type of sexual intimacies with clients." Provision C.5.e provides that counselors "do not use

---

**3.** The Bureau of Occupational Licenses and the ISCLB are both created within the Department of Self-governing Agencies. I.C. §§ 54–3401(3), 54–3403, 67–2602.

their professional positions to seek ... sexual favors." These provisions prohibit conduct without regard to whether the perpetrator had knowledge of guilt. Thus, the fine imposed upon McKeeth does not come into play only on a finding of *scienter*.

Fourth, we note that the conduct sanctioned in the instant case by the ISCLB is also criminalized by I.C. §§ 18–919 and 54–3408. However, this is insufficient to transform the minor fine imposed upon McKeeth into a criminal punishment. *See Hudson*, 522 U.S. at 105, 118 S.Ct. at 496, 139 L.Ed.2d at 463. By itself, the fact that a statute has some connection to a criminal violation is far from the clearest proof necessary to show that a proceeding is criminal. *Hudson*, 522 U.S. at 105, 118 S.Ct. at 496, 139 L.Ed.2d at 463; *Berglund*, 129 Idaho at 757, 932 P.2d at 880.

Fifth, we recognize that the imposition of monetary penalties will have a deterrent effect, which is a traditional goal of criminal punishment. However, the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals. *Hudson*, 522 U.S. at 105, 118 S.Ct. at 496, 139 L.Ed.2d at 463. Although the fines imposed by the ISCLB may be intended to deter future wrongdoing, the fines are deposited directly into the bureau of occupational licensing account in order to fund the ISCLB in its efforts to promote the integrity of the counseling profession as a whole. *See* I.C. §§ 54–3400; 54–3404; 67–2609(7). To hold that the presence of a deterrent purpose renders such sanctions criminal for double jeopardy purposes would severely undermine the state's ability to engage in effective regulation of the practice of counseling. *See* I.C. § 54–3400 (Regulation and control of the practice of counseling is in the public interest.). Lastly, we cannot say that a maximum fine of $1,000 per violation of I.C. § 54–3407 is excessive in

relation to the civil purposes underlying the fine.[4]

Based upon the factors discussed above, McKeeth has failed to show by clearest proof that the fine imposed by the ISCLB was sufficiently punitive to override the legislative intent that the fine constituted a civil remedy. We hold, therefore, that the imposition of the $3000 fine upon McKeeth was not a criminal punishment. Consequently, McKeeth's subsequent criminal prosecution did not violate the Double Jeopardy Clause of the federal constitution.

**2. State Constitution**

■ The Idaho Constitution's Double Jeopardy Clause declares that "[n]o person shall be twice put in jeopardy for the same offense." IDAHO CONST. art. I, § 13. The Idaho Supreme Court and this Court have held on a number of occasions that Idaho's constitutional double jeopardy provision is co-extensive with the federal constitution's double jeopardy clause. *See Berglund*, 129 Idaho at 757, 932 P.2d at 880; *State v. Reichenberg*, 128 Idaho 452, 457–58, 915 P.2d 14, 19–20 (1996); *State v. Sharp*, 104 Idaho 691, 693, 662 P.2d 1135, 1137 (1983); *State v. Randles*, 115 Idaho 611, 615, 768 P.2d 1344, 1348 (Ct.App.1989). Because we have held that the fine imposed by the ISCLB did not violate the federal Double Jeopardy Clause, we further hold that it does not violate the Idaho Double Jeopardy Clause. Consequently, the district court did not err in denying McKeeth's motion to dismiss, which was based on the double jeopardy clauses of the federal and state constitutions.

**B. Constitutionality of Idaho Code Section 18–919**

McKeeth next argues that I.C. § 18–919 is unconstitutionally overbroad because it infringes on the constitutionally protected privacy rights of medical care providers and

---

**4.** *See Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 778, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767, 778 (1994) (Although a high rate of taxation on illegal drugs is not dispositive as to whether the tax is a form of punishment, it is at least consistent with a punitive character.); *Berglund v. Potlatch Corp.*, 129 Idaho 752, 757, 932 P.2d 875, 880 (1996) (Forfeiture of money unlawfully received is not punitive for double jeopardy purposes because it bears a rational relationship to legitimate legislative purpose.); *State v. Ross*, 129 Idaho 380, 381, 924 P.2d 1224, 1225 (1996) (Civil forfeitures involving money laundering and drug statutes do not generally constitute punishment for purposes of the Double Jeopardy Clause.).

patients to engage in consensual sexual contact. Based upon his argument that I.C. § 18–919 is unconstitutional, McKeeth contends that the district court erred in rejecting his proposed jury instruction that the state had the burden of proving lack of consent.

There is a strong presumption that legislative enactments are constitutional. *State v. Leferink,* 133 Idaho 780, 784, 992 P.2d 775, 779 (1999). The overbreadth doctrine is aimed at statutes which, though designed to prohibit legitimately regulated conduct, include within their prohibitions constitutionally protected freedoms. *Id.; State v. Richards,* 127 Idaho 31, 35, 896 P.2d 357, 361 (Ct.App.1995). The strength of an overbroad challenge diminishes where the statutory proscription is directed at behavior other than pure speech. *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917–18, 37 L.Ed.2d 830, 842 (1973); *Richards,* 127 Idaho at 35, 896 P.2d at 361.

Although there is no express right of privacy in any specific provision of the federal constitution, the United States Supreme Court has held that the right of privacy is based upon a person's "interest in independence in making certain kinds of important decisions." *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64, 73 (1977). As a result, the Supreme Court has long recognized that there are certain activities which are constitutionally protected as fundamental rights under the label of constitutional privacy. These activities include the decision to marry, *Zablocki v. Redhail,* 434 U.S. 374, 384–86, 98 S.Ct. 673, 679–81, 54 L.Ed.2d 618, 629–31 (1978); the decision to live with relatives, *Moore v. East Cleveland,* 431 U.S. 494, 498–99, 97 S.Ct. 1932, 1935–36, 52 L.Ed.2d 531, 536–37 (1977); decisions relating to child rearing and education, *Moore,* 431 U.S. at 499–500, 97 S.Ct. at 1935–36, 52 L.Ed.2d at 537–38; *Pierce v. Society of Sisters,* 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070, 1078 (1925); decisions regarding the use of contraception by unmarried persons, *Eisenstadt v. Baird,* 405 U.S. 438, 453–54, 92 S.Ct. 1029, 1038–39, 31 L.Ed.2d 349, 362–63 (1972); and the decision to possess obscene matter in one's own home. *Stanley v. Georgia,* 394 U.S. 557, 568, 89 S.Ct. 1243, 1249–50, 22 L.Ed.2d 542, 551 (1969). Notwithstanding the elevated constitutional status accorded certain privacy interests, the Supreme Court has emphasized that there is no open-ended immunity for consenting adults to engage in any and all types of sexual behavior. *Bowers v. Hardwick,* 478 U.S. 186, 191, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140, 146 (1986).

In *Ferguson v. People,* 824 P.2d 803 (1992) (en banc), the Supreme Court of Colorado considered the constitutionality of a statute prohibiting consensual and nonconsensual sexual contact between a psychotherapist and a client. The Supreme Court of Colorado acknowledged that certain private activities and intimate relationships qualify for the elevated status of fundamental constitutional rights. However, the court concluded that "it has never been the law that consenting adults, solely by virtue of their adulthood and consent, have a constitutionally protected privacy or associational right to engage in any type of sexual behavior of their choice under any circumstances." *Id.* at 808. The court recognized that treatment may cause a client to develop a deep emotional dependence upon the psychotherapist and that the professional community nearly unanimously considers the mismanagement of this dependence to be malpractice. The court held that it had "no hesitation in concluding that neither the treating psychotherapist nor the psychotherapy client has a fundamental constitutional right to engage in sexual intercourse with each other during the existence of a psychotherapist-client relations." *Id.* at 810.

Likewise, we are persuaded that any privacy interest created by a counselor-patient relationship does not give rise to any fundamental right on the part of the professional counselor or the patient to engage in sexual conduct during the course of the professional relationship. The record reveals that the misconduct in the instant case occurred *during* treatment sessions rather than as part of a romantic relationship. Many of the victims were visiting McKeeth for marriage counseling and attempting to work through issues regarding past sexual

abuse. McKeeth would often tell his victims that he loved them and that he would relieve their pain and relax them by touching their breasts, groin, and pelvic area. Under the facts of this case, we reject McKeeth's argument that I.C. § 18–919 is unconstitutionally overbroad. Because the statute's prohibition of consensual sexual contact between professional counselors and patients is not unconstitutional, the district court did not err in rejecting McKeeth's proposed jury instruction that the state had the burden of proving lack of consent.

## C. Speed Trial

■■■ McKeeth argues on appeal that his speedy trial rights under I.C. § 19–3501(2) were violated and that the district court therefore erred in denying his motion to dismiss Counts I-III. Whether there was an infringement of a defendant's right to speedy trial presents a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). We will defer to the trial court's findings of fact if supported by substantial and competent evidence; however, we will exercise free review of the trial court's conclusions of law. *Id.*

■■■ Idaho Code Section 19–3501 sets specific time limits within which a criminal defendant must be brought to trial, and provides:

> The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:

> 1. When a person has been held to answer for a public offense, if an indictment or information is not found against him and filed with the court within six (6) months from the date of his arrest.

> 2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court.

> 3. If a defendant, charged with a misdemeanor offense, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from

the date that the defendant enters a plea of not guilty with the court.

Under I.C. § 19–3501, criminal defendants are given additional protection beyond what is required by the United States and Idaho Constitutions. *Clark*, 135 Idaho at 258, 16 P.3d at 934. Idaho Code Section 19–3501 mandates that, unless the state can demonstrate "good cause" for a delay greater than six months, the court must dismiss the case. "[G]ood cause means that there is a substantial reason that rises to the level of a legal excuse for the delay." *Clark*, 135 Idaho at 260, 16 P.3d at 936. In determining whether good cause exists, the district court may consider the following additional factors insofar as they bear on the sufficiency or strength of the reason for the delay: (1) the length of the delay; (2) whether the defendant asserted the right to a speedy trial; and (3) the prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972); *Clark*, 135 Idaho at 258–60, 16 P.3d at 934–36. "Thus, the ultimate question of whether legal excuse has been shown is a matter for judicial determination upon the facts and circumstances of each case." *Clark*, 135 Idaho at 260, 16 P.3d at 936.

McKeeth pled not guilty on August 25, 1999, to Counts I-III, and a trial date was immediately set by a magistrate for April 10, 2000. On August 27, 1999, McKeeth filed an objection to the trial date because it was set beyond the six-month time limit. On September 8, 1999, the state filed a "Notice of Setting Outside Time Period," advising that the trial date was "outside the time period allocated by the Constitution of the State of Idaho, Idaho Code § 19–3501, and case law." On February 25, 2000, McKeeth filed a motion to dismiss the three counts pursuant to I.C. § 19–3501(3). On or about this same date, the instant case was transferred from the magistrate's division to the district court.

■■■ Following a hearing, the district court denied McKeeth's motion to dismiss on two alternative grounds. First, the district court concluded that court congestion constituted good cause for the delay in McKeeth's trial. However, the Idaho Supreme Court thereafter clarified that court congestion may

not substitute as good cause for a delay beyond the six-month limit, if the state cannot otherwise demonstrate adequate legal justification for the delay. *See Clark*, 135 Idaho at 261, 16 P.3d at 937. The Idaho Supreme Court noted that it had "never stated that criminal defendants do not have a speedy trial right because of court congestion." *Id.* The state in the instant case failed to present any evidence to the district court justifying the delay beyond the six-month limit. The ultimate responsibility for the delay must rest with the government rather than with the defendant. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; *Clark*, 135 Idaho at 261, 16 P.3d at 937. Thus, the district court erroneously concluded that court congestion, standing alone, constituted good cause for the delay of McKeeth's trial.

■■■■ In the alternative, the district court concluded that the six-month period began to run from the plea of not guilty to the charges contained in the amended complaint. That plea of not guilty to the amended charges, which added three counts, was entered on October 29, 1999. Thus, the district court concluded that the six-month period had not yet expired. However, the time limitation is not renewed absent a formal dismissal and refiling of the original charges. *See State v. Horsley*, 117 Idaho 920, 926, 792 P.2d 945, 951 (1990); *State v. Goodmiller*, 86 Idaho 233, 235, 386 P.2d 365, 367 (1963). The mere amendment of a misdemeanor complaint does not restart the time limitation in I.C. § 19–3501(3) as to the original charges. The district court erroneously concluded that the six-month period began to run anew from the plea of not guilty to the additional charges contained in the amended complaint. Accordingly, we hold that the district court abused its discretion in denying McKeeth's motion to dismiss Counts I III pursuant to I.C. § 19–3501(3). Therefore, McKeeth's judgments of conviction and sentences for Counts I–III must be vacated.

## D. Conditional Plea Agreement

In light of our holding regarding Counts I–III, McKeeth argues that he should be allowed to withdraw his guilty pleas to Counts IV-VI pursuant to his conditional plea agreement with the state. Idaho Criminal Rule 11(a)(2) provides that a defendant "may enter a conditional plea of guilty reserving in writing the right, on appeal from the judgment, to review any specified adverse ruling [and if] the defendant prevails on appeal, the defendant shall be allowed to withdraw defendant's plea." Pursuant to Rule 11(a)(2), McKeeth entered into a conditional plea agreement with the state. The written plea agreement provided the following:

> William McKeeth, defendant herein, agrees to enter a conditional plea of guilty pursuant to ICR 11(a)(2) to the six counts of I.C. § 18–919 as alleged in the Second Amended Complaint. Defendant thereby reserves the right to appeal from the Court's denial of all pre-trial motions. The State of Idaho hereby consents to this reservation of rights. If the defendant prevails on appeal, he will be allowed to withdraw his guilty plea to the charge.

Because he has prevailed before this Court on his motion to dismiss, McKeeth argues that he should be allowed to withdraw his guilty plea as to all six counts to which he pled guilty. In support of his argument, McKeeth cites *State v. Schaffer*, 133 Idaho 126, 982 P.2d 961 (Ct.App.1999), in which this Court allowed a defendant to withdraw his guilty plea to possession of a controlled substance even though the challenged motion to suppress involved evidence that was unrelated to the possession charge. McKeeth asserts that this Court should allow him to withdraw his guilty pleas to all six counts even though his motion to dismiss for lack of a speedy trial was unrelated to Counts IV–VI.

■■■■ A careful reading of *Schaffer* reveals, however, that the sole reason the defendant was entitled to withdraw his guilty plea to the possession charge was because the language of his written plea agreement specifically allowed him to do so in the event that he prevailed on appeal as to the motion to suppress. *See Schaffer*, 133 Idaho at 129 n. 2, 982 P.2d at 964 n. 2. Thus, we must consider the language of the written plea agreement in the instant case. The plea agreement provides that McKeeth is entitled

to withdraw his guilty plea "to the charge" in the event that he prevails on appeal. McKeeth pled guilty to six individual charges of sexual exploitation by a medical care provider. Because we have held that the district court erroneously denied McKeeth's motion to dismiss on the speedy trial issue, McKeeth has prevailed on appeal as to Counts I-III. Counts IV-VI were not challenged by McKeeth's motion to dismiss relating to the issue of the right to a speedy trial. Moreover, McKeeth has failed to prevail on appeal as to Counts IV-VI in regard to the other issues discussed above in this opinion. Therefore, we hold that McKeeth is not entitled to withdraw his guilty plea as to Counts IV-VI.

## D. Sentence Review

 McKeeth argues that the district court abused its discretion in sentencing him to a one-year term of incarceration for Count IV. McKeeth contends that the one-year term is excessive and that he should have been placed on probation for that count. Our appellate standard of review and the factors to be considered when evaluating the reasonableness of a sentence are well established. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978); *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989); *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct. App.1982); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). Applying these standards and having reviewed the record in this case, we cannot say that the district court abused its discretion in sentencing McKeeth to a one-year term of incarceration for Count IV of sexual exploitation by a medical care provider.

## E. Restitution

 McKeeth argues that the district court also abused its discretion in awarding restitution to the Crime Victims Compensation Fund and to C.H. for expenses incurred as a result of the criminal conduct alleged in Count II. A restitution order "must be limited to the crime or counts to which a defen-

dant pled guilty or on which he was convicted." *State v. Aubert*, 119 Idaho 868, 870, 811 P.2d 44, 46 (Ct.App.1991). Having held that the judgments of conviction and sentences for Counts I-III must be vacated, we are constrained to hold that the restitution awarded to the alleged victims of Counts I-III must likewise be reversed. *See* I.C. §§ 19-5304(1)(e), (9); *State v. Hargis*, 126 Idaho 727, 730, 889 P.2d 1117, 1120 (Ct.App. 1995); *Aubert*, 119 Idaho at 869-71, 811 P.2d at 45-47. Consequently, we need not consider further McKeeth's argument regarding restitution awarded as a result of the criminal conduct alleged in Count II.

 McKeeth also argues that the district court abused its discretion in awarding restitution to the Crime Victims Compensation Fund for the future counseling of T.R., the alleged victim in Count IV, in the amount of $1,050.[5] Idaho Code Section 19-5304 gives a sentencing judge broad discretion in determining the amount of restitution to be paid in a criminal action; an order of restitution will not be disturbed on appeal absent an abuse of discretion. *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct.App.1989). A review of the record reveals that the district court awarded the amount in response to a letter submitted by the state in which the counselor providing mental health treatment to T.R. estimated that the cost to complete the recommended course of treatment would be $1,050. On appeal, McKeeth contends that the award of "potential economic losses" to the Crime Victims Compensation Fund is not permitted under the restitution statute.

 The argument raised by McKeeth requires that we interpret the language of I.C. § 19-5304. The interpretation of a statute is a question of law over which we have free review. *State v. Miller*, 134 Idaho 458, 462, 4 P.3d 570, 574 (Ct.App.2000); *State v. Martinez*, 126 Idaho 801, 803, 891 P.2d 1061, 1063 (Ct.App.1995). The interpretation of a statute begins with an examination of its literal words. *Miller*, 134 Idaho at 462, 4 P.3d at 574; *State v. Watts*, 131 Idaho

5. McKeeth does not challenge the portion of the restitution order that awards $375.34 to T.R. for

out-of-pocket expenses.

 

782, 784, 963 P.2d 1219, 1221 (Ct.App.1998). Generally, words and phrases are construed according to the context and the approved usage of the language. I.C. § 73–113; *Miller*, 134 Idaho at 462, 4 P.3d at 574; *State v. Baer*, 132 Idaho 416, 417–18, 973 P.2d 768, 769–70 (Ct.App.1999). When a statute is clear and unambiguous, it must be interpreted in accordance with its language, courts must follow it as enacted and a reviewing court may not apply rules of construction. *State v. Wiedmeier*, 121 Idaho 189, 191, 824 P.2d 120, 122 (1992); *Miller*, 134 Idaho at 462, 4 P.3d at 574.

■ Idaho Code Section 19–5304(2) provides that restitution "shall be ordered for any economic loss which the victim actually suffers." The term "economic loss" includes "direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct." I.C. § 19–5304(1)(a). The term "actually" is defined as "in act or in fact" or as "at the present moment: for the time being." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). The term "actual" is defined as "existing in act ... EXISTENT contrasted with *potential* and *possible*." *Id.*

Based upon these definitions, I.C. § 19–5304(2) authorizes a district court to order restitution when a victim "at the present moment" suffers out-of-pocket expenses. In other words, I.C. § 19–5304(2) allows for restitution for "present" or "existent" suffering due to the payment of expenses. At the time of the request for restitution in the instant case, the Crime Victims Compensation Fund was not experiencing any present or existent suffering due to the payments of the $1,050 because the money had not yet been paid. Therefore, the district court abused its discretion in awarding the $1,050 as restitution.[6] The restitution order for Counts I–III is reversed and $1,050 of the restitution order to the Victims Compensation Fund for Count IV is also reversed. The restitution order for T.R. in the amount of $375.34 is affirmed.

---

6. However, we note that the Crime Victims Compensation Fund is not precluded from recovering the amount if and when payment is actually made on T.R.'s behalf. Idaho Code Section I.C. § 19–5304(6) specifically provides, in pertinent

## III.

### CONCLUSION

Based upon the foregoing, McKeeth's judgments of conviction and sentences for Counts I–III of sexual exploitation by a medical care provider are vacated. McKeeth's judgments of conviction and sentences for Counts IV–VI of sexual exploitation of a medical provider are affirmed. The restitution order for Counts I–III is reversed and $1,050 of the restitution order to the Victims Compensation Fund for Count IV is also reversed. The restitution order for T.R. in the amount of $375.34 is affirmed.

Chief Judge SCHWARTZMAN and Judge Pro Tem SCHILLING, concur.

---

part: "Restitution orders shall be entered by the court at the time of the sentencing *or such later date as deemed necessary by the court.*" (Emphasis added.).