## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 37404

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE DRIVER'S LICENSE SUSPENSION OF JAMES KEVIN BUELL. | ) ) ) | |
| JAMES KEVIN BUELL, | ) ) | **2011 Opinion No. 21** |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | **Filed: April 19, 2011** |
| IDAHO DEPARTMENT OF TRANSPORTATION, | ) ) ) | **Stephen W. Kenyon, Clerk** |
| Defendant-Respondent. | ) ) ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Benewah County. Hon. Fred M. Gibler, District Judge.

Decision of the district court, affirming an administrative order disqualifying commercial driver's license following conviction for driving under the influence, affirmed.

James E. Siebe, Moscow, for appellant.

Susan K. Servick, Coeur d'Alene, for respondent.

_____

MELANSON, Judge

James Kevin Buell appeals from the district court's decision upon judicial review affirming the Idaho Transportation Department's order disqualifying Buell's commercial driver's license following his conviction for driving under the influence. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

On October 21, 2006, Buell was arrested for driving a noncommercial vehicle while under the influence (DUI). After his arrest, Buell refused to take a breath alcohol concentration (BAC) test. As a result, Buell was given a suspension advisory form, his noncommercial driver's license was seized, and he was issued a temporary thirty-day noncommercial driving

permit. Buell was charged with DUI. In December 2006, pursuant to a plea agreement, Buell pled guilty to the DUI and the civil BAC refusal matter was dismissed. Buell was not sentenced until July 10, 2007. At sentencing, the district court suspended Buell's noncommercial driver's license for ninety days but, in accordance with the parties' agreement, the suspension was backdated to begin on the day of Buell's arrest--October 21, 2006. On July 19, 2007, the Idaho Transportation Department (ITD) sent Buell a notice advising him that his commercial driver's license (CDL) was disqualified for one year beginning August 6, 2007. Buell requested an administrative hearing on his CDL disqualification. The hearing officer upheld the disqualification of Buell's CDL, but recommended that the disqualification be made retroactive to November 21, 2006, because that was the date Buell represented he had ceased having commercial driving privileges.[1]

The ITD disagreed with the hearing officer's recommendation for a retroactive starting date of Buell's CDL disqualification. On September 7, 2007, the ITD wrote a letter to the hearing officer requesting reconsideration of the hearing officer's recommendation. The ITD argued that Buell's CDL privileges were not withdrawn until he received the notification letter on July 19, 2007, and that, consequently, there was no basis for backdating the disqualification. On October 1, 2007, the ITD sent an amended notice to Buell informing him that his CDL was disqualified beginning July 10, 2007. Several days later, the ITD sent a letter to Buell informing him that it was not bound by the hearing officer's recommendation that his CDL disqualification be backdated, that his CDL disqualification starting date had been changed to coincide with his DUI conviction date, and that, consequently, it was withdrawing its motion for reconsideration.[2]

---

[1]     Buell stated at the administrative hearing that, after his arrest on October 21, 2006, his driver's license was suspended and he was issued a thirty-day temporary permit. The thirty-day permit ended on November 21, 2006. Buell stated that he had been without any driving privileges (either commercial or noncommercial) since that time. There is no independent evidence in the record to support the conclusion that Buell's CDL was disqualified during this timeframe. The record demonstrates that Buell was first notified that his CDL was disqualified on July 19, 2007.

[2]     The ITD based its change of the starting date for Buell's CDL disqualification on the Federal Motor Carrier Safety Administration (FMSCA) regulations governing commercial driver's licenses. 49 C.F.R. 383.51. The FMCSA has issued guidance interpreting this section. According to the guidance, this regulation requires states to use the date of conviction, rather

In response, Buell filed a petition for judicial review with the district court. On October 15, 2007, an ex parte order was issued staying enforcement of the disqualification and reinstating Buell's CDL pending the district court's judicial review. After a hearing, the district court upheld the hearing officer's disqualification of Buell's CDL. Buell appeals.[3]

## II.

## ANALYSIS

On appeal, Buell argues that the administrative disqualification of his CDL, pursuant to I.C. § 49-335, violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 13 of the Idaho Constitution. Specifically, Buell asserts that, despite being civil in nature, the administrative disqualification of his CDL is so punitive as to effectively be a criminal penalty. Buell argues that, because the disqualification of his CDL is effectively a criminal penalty, he has been subjected to multiple punishments and convictions in violation of the Double Jeopardy Clause. In addition, Buell argues that due process requires that his CDL disqualification be made retroactive because I.C. §§ 18-8002, 18-8002A, and 49-335 are ambiguous as to when his CDL disqualification began. Buell also argues that estoppel principles should be applied to make his CDL disqualification retroactive to November 21, 2006, because that is the date he thought his CDL disqualification began.

The Idaho Administrative Procedures Act (IDAPA) governs the review of the ITD's decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under the IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.,* 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.,* 130 Idaho 923, 926, 950 P.2d 1262, 1265

than the offense date, to calculate the starting and ending date of driver's license disqualifications.

[3] Enforcement of Buell's CDL disqualification was stayed pending this appeal.

(1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669.  In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record.  *Urrutia v. Blaine County, ex rel. Bd. of Comm'rs,* 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall,* 137 Idaho at 340, 48 P.3d at 669.

The Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions:  (a) violate statutory or constitutional provisions;  (b) exceed the agency's statutory authority;  (c) are made upon unlawful procedure;  (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion.  I.C. § 67-5279(3).  The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced.  *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669.  If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary."  I.C. § 67-5279(3).

## A.    Double Jeopardy

Buell argues that he was subjected, in consecutive prosecutions, to multiple convictions and punishments for the same offense.  Whether a defendant's prosecution complies with the constitutional protection against being placed twice in jeopardy is a question of law over which we exercise free review.  *State v. Santana*, 135 Idaho 58, 63, 14 P.3d 378, 383 (Ct. App. 2000).  We initially note that Buell does not claim that the Double Jeopardy Clause of the Idaho Constitution provides any broader protection than that of the United States Constitution.[4]  Therefore, we will analyze this claim under the Double Jeopardy provisions of the United States Constitution.  *See State v. Talavera*, 127 Idaho 700, 703, 905 P.2d 633, 636 (1995); *State v. McKeeth*, 136 Idaho 619, 625, 38 P.3d 1275, 1280 (Ct. App. 2001).  The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same

---

[4]    The Idaho Appellate Courts have consistently applied one analysis to double jeopardy claims arising under both the United States and Idaho Constitutions when the issue is whether a civil sanction is so punitive as to be criminal for double jeopardy purposes.  *See Berglund v. Potlatch Corp.*, 129 Idaho 752, 757, 932 P.2d 875, 880 (1996); *State v. Reichenberg*, 128 Idaho 452, 458, 915 P.2d 14, 20 (1996); *State v. Talavera*, 127 Idaho 700, 703, 905 P.2d 633, 636 (1995); *State v. Sharp*, 104 Idaho 691, 693, 662 P.2d 1135, 1137 (1983); *State v. Randles*, 115 Idaho 611, 615, 768 P.2d 1344, 1348 (Ct. App. 1989).

offense to be twice put in jeopardy of life or limb." The Clause affords a defendant three basic protections. It protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple criminal punishments for the same offense. *Schiro v. Farley,* 510 U.S. 222, 229 (1994); *McKeeth*, 136 Idaho at 622, 38 P.3d at 1278.

Buell argues that he was subjected to multiple convictions and punishments for the same offense because, although civil in nature, the administrative disqualification of his CDL is so punitive in form and effect as to be transformed into a criminal punishment for double jeopardy purposes. In 1995, the Idaho Supreme Court held that a defendant who was convicted of DUI and whose driver's license was subsequently suspended for ninety days pursuant to I.C. § 18-8002A was not subjected to multiple convictions and punishments in violation of the Double Jeopardy Clause of the United States and Idaho Constitutions. *Talavera*, 127 Idaho at 705, 905 P.2d at 638. Talavera argued that the ninety-day license suspension, under I.C. § 18-8002A, was so punitive that it should be considered a criminal punishment for double jeopardy purposes. The Court held that the proper inquiry for determining whether a civil sanction rises to the level of a criminal punishment for double jeopardy purposes is whether the sanction, as applied, bears a rational relationship to a legitimate remedial purpose. *Id*. at 705, 905 P.2d at 638. The Court noted that the remedial purpose of I.C. § 18-8002A is to provide maximum safety to the public by getting drivers who fail blood alcohol concentration tests off of public roadways immediately. *Id*. The Court held that, because the driver's license suspension was not disproportionate to the statute's legitimate remedial goal, it did not rise to the level of a criminal punishment and was not a violation of double jeopardy. *Id*.

Were we to rely on *Talavera*, we would consider whether the one-year disqualification of Buell's CDL, as applied to him, bears a rational relationship to a legitimate remedial purpose. The Court in *Talavera* noted that the purpose of I.C. § 18-8002A was to promote safety by quickly disqualifying drivers who pose a hazard to the public at-large. Similarly, the remedial purpose of I.C. § 49-335 is to provide for the safety of the public by removing problem drivers from the road through disqualification. Statement of Purpose, SB 1001 (1989). Because I.C. § 49-335 serves the same legitimate remedial goals as I.C. § 18-8002A, we would conclude, under *Talavera*, that the disqualification of Buell's CDL was proportionate to the state's remedial purpose and did not rise to the level of a criminal punishment. Therefore, we would

5

hold that the disqualification of Buell's CDL did not subject him to multiple convictions and punishments in violation of the Double Jeopardy Clause.

Subsequent case law has, however, called the analytical method utilized in *Talavera* into question. In conducting its analysis, the *Talavera* Court relied almost exclusively on *United States v. Halper*, 490 U.S. 435 (1989), *abrogated by Hudson v. United States*, 522 U.S. 93 (1997). Under the Double Jeopardy Clause, "a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Halper*, 490 U.S. at 448-49.

In 1997, however, the United States Supreme Court disavowed the double jeopardy analysis used in *Halper*. *Hudson*, 522 U.S. at 101-02. In *Hudson*, the United States Supreme Court held that *Halper's* deviation from traditional double jeopardy doctrine was ill-considered and that its test had proved unworkable. *Hudson*, 522 U.S. at 101-02. The *Hudson* Court substituted a multi-part test for determining whether a civil sanction rises to the level of punishment for double jeopardy purposes. First, a court must ask whether the legislature indicated either expressly or impliedly that the statute should be considered criminal or civil in nature. *Id*. at 99. In cases where the legislature has indicated an intention to establish a civil penalty, there must be further inquiry to determine whether the statutory scheme was so punitive as to transform what was clearly intended as a civil remedy into a criminal penalty. *Id*. In making this determination, the court should consider the following factors, including whether: (1) the sanction involves an affirmative disability or restraint; (2) the sanction has historically been regarded as punishment; (3) the sanction comes into play only on a finding of scienter; (4) the sanction's operation will promote the traditional aims of punishment, retribution, and deterrence; (5) the behavior to which the sanction applies is already criminal; (6) an alternative purpose to which the sanction may rationally be connected is assignable to it; and (7) the sanction appears excessive in relation to the alternative purpose assigned. *Id*. at 99-100. Buell argues that, rather than follow *Halper* and *Talavera*, we should employ the analysis used in

*Hudson*. Because *Talavera* relied almost exclusively on *Halper* and because *Halper* has been abrogated by *Hudson*, we will apply the *Hudson* analysis in this case.[5]

Under *Hudson*, we must first determine whether the Idaho legislature intended for the one-year CDL disqualification under I.C. § 49-335 to be civil or criminal. Whether a statutory scheme is civil or criminal is a question of statutory construction. *Smith v. Doe*, 538 U.S. 84, 91 (2003). To determine the legislature's intention, consideration should be given to the statute's text and structure. *Id*. Although the text of I.C. § 49-335 does not expressly state whether the statute is civil or criminal, the Idaho legislature's intention to create a civil proceeding is evidenced by its placement of the CDL disqualification provisions within the motor vehicle code instead of the criminal code. *See Kansas v. Hendricks*, 521 U.S. 346, 361 (1997). The Idaho legislature had a civil remedial purpose in creating the statute. As noted above, the purpose of I.C. § 46-335 is to provide for public safety through the removal of problem drivers from the road by license disqualification. Review of the statute suggests that the legislature did not seek to create anything other than a civil scheme designed to protect the public from harm. In addition, when the legislature gives authority to an administrative agency we will presume that it intended to provide for a civil sanction. *See Hudson*, 522 U.S. at 103. Here, the authority to suspend a CDL was conferred by the legislature upon the ITD--a state agency. Therefore, we hold the legislature intended disqualification from operating a commercial motor vehicle under I.C. § 49-335 to be a civil sanction.

Nevertheless, we must also inquire whether the statutory scheme governing the CDL disqualification imposed upon Buell was so punitive either in purpose or effect as to transform what was intended as a civil remedy into a criminal penalty. To make this determination, we must weigh the seven factors laid out in *Hudson*. It is important to note that these factors must be considered in relation to the statute on its face and that only the clearest proof will suffice to transform what has been denominated a civil remedy into a criminal penalty. *Hudson*, 522 U.S. at 100. First, we note that the disqualification of a CDL pursuant to I.C. § 49-335 does not impose an affirmative disability or restraint that approaches criminal punishment on the license holder. In *Hudson*, the petitioners were bank officers who were criminally convicted for

---

[5]     In addition, this Court has previously utilized *Hudson* and not *Halper* in its analysis of whether a civil sanction should be viewed as a criminal punishment for double jeopardy purposes. *McKeeth*, 136 Idaho 619, 622-24, 38 P.3d 1278-80.

misapplication of bank funds. Subsequent to their criminal convictions, the petitioners were also debarred from working in the banking industry and were subject to monetary penalties. *Hudson*, 522 U.S. at 97. In holding that the additional civil penalties did not rise to the level of criminal punishment for double jeopardy purposes, the *Hudson* Court noted that, while the petitioners were prohibited from making their livelihoods in the banking industry, the sanctions were nothing approaching the infamous punishment of imprisonment. *Id*. at 104. Similarly, while a CDL disqualification prevents a CDL holder from making his or her livelihood from driving commercial vehicles, it does not impose a restraint that approaches the punishment of imprisonment. *See Id*.

Second, we must consider whether driver's license suspensions have been regarded as punishment. Idaho appellate courts have not viewed driver's license suspensions as punishment. *See Talavera*, 127 Idaho at 638, 905 P.2d at 706; *McKeeth*, 136 Idaho at 623, 38 P.3d at 1279; *State v. Gusman*, 125 Idaho 810, 812-13, 874 P.2d 1117, 1119-1120 (Ct. App. 1993). *See also United States. v. Roberts*, 845 F.2d 226, 228 (9th Cir. 1988). Therefore, we hold that a CDL disqualification has not historically been regarded as punishment.

Third, we must consider whether a one-year CDL disqualification comes into play only on a finding of scienter. Under I.C. § 49-335(1)(a), the prerequisite for a one-year CDL disqualification is conviction of a DUI. Under I.C. § 49-335(2), the prerequisite for a one-year CDL disqualification is refusal or failure of a BAC test. There is no scienter required for a disqualification under either subpart.

Fourth, we must consider whether the behavior attached to the one-year CDL disqualification is already a crime. We note that the conduct sanctioned in the instant case is also criminalized by I.C. § 18-8004. However, this is insufficient to transform the one-year CDL disqualification imposed on Buell into a criminal punishment. *See McKeeth*, 136 Idaho at 624, 38 P.3d at 1280. A statute that has some connection to a criminal violation is, by itself, far from the clearest proof necessary to show that a sanction is criminal. *Id*.

Fifth, we must consider whether a one-year CDL disqualification promotes the traditional aims of punishment, retribution, and deterrence. Buell, citing to *State v. Ankeny*, 109 Idaho 1, 704 P.2d 333 (1985), argues that, because a driver's license is a valuable property right that cannot be taken away without proper due process, the suspension of a driver's license has a punitive criminal element. There is no support in *Ankeny*, however, for the proposition that the

suspension of a driver's license is punitive. The Court in *Ankeny* held that, while a driver does have a substantial right in his or her driver's license, the state's interest in preventing intoxicated persons from driving far outweighs the individual's interest, especially because the individual is entitled to a prompt post-seizure hearing. *Ankeny*, 109 Idaho at 5, 704 P.2d at 337. This holding supports the conclusion that the state has a strong remedial and nonpunitive reason for suspending driver's licenses. We recognize that a one-year CDL disqualification will have a deterrent effect, which is a traditional goal of criminal punishment. However, deterrence may serve civil as well as criminal goals. *Hudson*, 522 U.S. at 105; *McKeeth*, 136 Idaho at 624, 38 P.3d at 1280. For example, the sanctions at issue here, while intended to deter future wrongdoing, also serve to provide for the safety of the public at-large. To hold that the mere presence of a deterrent purpose renders such sanctions criminal for double jeopardy purposes would severely undermine the state's ability to engage in effective regulation of driver's licenses. Therefore, we hold the mere presence of a deterrent effect is insufficient to render a one-year CDL disqualification criminal.

Sixth, we must consider whether there is a purpose other than punishment that could be assigned to the one-year CDL disqualification and whether the disqualification is excessive in relation to the alternative purpose assigned to it. As noted above, the purpose of I.C. § 49-335 is to remove problem drivers from the road through disqualification. Statement of Purpose, SB 1001 (1989). The right of a citizen to operate a motor vehicle is substantial, but it is also subject to reasonable regulation by the state in the exercise of its police powers. *Talavera*, 127 Idaho at 705, 905 P.2d at 638. When a person is approved for a CDL, he or she agrees to abide by certain conditions and regulations. *Id*. The commercial driving industry is highly regulated because of the size and weight of commercial vehicles and the heightened danger they pose to the public should they be misused. Impaired commercial drivers pose a unique danger to the public because of the type of vehicles they operate. Therefore, disqualification of a CDL indicates only that the holder has failed to comply with the agreed conditions, not that he or she is being punished for a particular act. *Id*. Further, a one-year disqualification from driving a commercial vehicle is not disproportionate to the statute's legitimate remedial goal of keeping problem drivers off the roadways.

9

Based on the *Hudson* factors, we hold that a one-year CDL disqualification is civil in nature and does not rise to the level of a criminal punishment for double jeopardy purposes. Therefore, we affirm the district court's order upholding Buell's one-year CDL disqualification.

**B.      Disqualification Starting Date**

Buell argues that his due process rights were violated because I.C. §§ 18-8002, 18-8002A, and 49-335 are ambiguous and did not adequately notify him of when his CDL disqualification would begin. Idaho Code Sections 18-8002 and 18-8002A are part of the criminal code. Idaho Code Section 18-8002 provides for suspension of a noncommercial driver's license when a driver has refused to submit to an evidentiary BAC test. Idaho Code Section 18-8002A provides for the suspension of a driver's license when a driver has failed an evidentiary BAC test. The motor vehicle code prescribes additional consequences that result from a motorist's refusal to submit to evidentiary testing or for failing such testing. I.C. § 49-335. Idaho Code Section 49-335(1)(a) provides that a CDL holder will be disqualified from operating a commercial vehicle for one year if convicted of driving under the influence. Idaho Code Section 49-335(2) provides that a CDL holder will be disqualified from operating a commercial vehicle for one year if the person refuses to submit to or fails a BAC evidentiary test. A disqualification under I.C. § 49-335 is in addition to a suspension under I.C. §§ 18-8002 or 18-8002A and relates solely to the driver's CDL. A holder of a CDL is presumed to have knowledge of the laws governing CDLs. *See Wilson v. State*, 133 Idaho 874, 880, 993 P.2d 1205, 1211 (Ct. App. 2000). Therefore, Buell was presumed to know that the disqualification of his CDL was in addition to any suspensions he received under either I.C. §§ 18-8002 or 18-8002A.

Buell also argues that it was unclear whether his CLD disqualification was pursuant to I.C. §§ 49-335(1) or 49-335(2) and, therefore, whether his CLD disqualification was to begin at the moment he refused the BAC or, alternatively, on the date of his conviction. Buell's refusal of the evidentiary BAC test was dismissed pursuant to a plea agreement. Therefore, his CDL disqualification was based, not on his refusal of the BAC, but on his conviction for DUI. Buell was given no reason to believe that his CDL had been suspended prior to July 19, 2007, which is the date that Buell first received notice from the ITD that he was disqualified from operating a commercial vehicle. Until the ITD issued its notice of disqualification to Buell on July 19, 2007, no action had been taken by the ITD with respect to Buell's CDL. Because Buell suffered no

10

action against his CDL until July 19, 2007, there was no basis for the district court to order a retroactive disqualification of his CDL. While Buell may have been confused as to when the period of his CDL disqualification was to begin, his confusion does not mean that the statute is ambiguous. Therefore, the statute is not ambiguous as applied in this case, and Buell was not denied due process.

Finally, Buell argues that estoppel principles should be applied to make his CDL disqualification retroactive to November 21, 2006, because he believed his disqualification began on that date. Estoppel may not ordinarily be invoked against a government or public agency functioning in a sovereign or governmental capacity. *Young Elec. Sign Co. v. State ex rel Winder*, 135 Idaho 804, 810, 25 P.3d 117, 123 (2001). To apply estoppel principles in this case would effectively prevent the state from imposing driver's license disqualifications whenever the driver was under some confusion regarding the start date of his or her disqualification. Therefore, estoppel is not an appropriate remedy in this case.

## III.

## CONCLUSION

A one-year CDL disqualification under I.C. § 49-335 is civil in nature and does not rise to the level of a criminal punishment for double jeopardy purposes. Buell was not denied due process because the CDL disqualification statute was not ambiguous as to the date Buell's CDL disqualification was to begin. In addition, estoppel is not an appropriate remedy against the ITD in this case. Therefore, the district court's decision upon judicial review affirming the administrative disqualification of Buell's CDL is affirmed. Costs, but not attorney fees, on appeal are awarded to respondent, Department of Transportation.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**