**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39122**

| | |
|---|---|
| IN THE MATTER OF THE DRIVER'S LICENSE SUSPENSION OF STEVEN LESLIE WILLIAMS. ) ) ) | 2012 Opinion No. 40 |
| -------------------------------------------------------- ) | Filed: July 30, 2012 |
| STEVEN LESLIE WILLIAMS, ) ) | Stephen W. Kenyon, Clerk |
| Petitioner-Appellant, ) ) | |
| v. ) ) | |
| STATE OF IDAHO, DEPARTMENT OF TRANSPORTATION, ) ) ) | |
| Respondent. ) ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Order of the district court affirming the hearing officer's decision disqualifying Williams from holding a commercial driver's license following second conviction for driving under the influence, <u>affirmed</u>.

Amendola & Doty, PLLC; Gary I. Amendola, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise; Susan K. Servick, Special Deputy Attorney General, Coeur d'Alene, for respondent.

---

GRATTON, Chief Judge

Steven Leslie Williams appeals from the district court's decision upon judicial review affirming the Idaho Transportation Department's (ITD) order disqualifying Williams from holding a commercial driver's license (CDL) following his conviction for driving under the influence (DUI). For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 12, 2010, Williams was arrested for his second DUI. Both offenses occurred while Williams was driving a noncommercial vehicle. Due to the offenses, ITD notified

1

Williams of a lifetime disqualification of his CDL. Williams timely requested an administrative hearing.

The hearing officer upheld the lifetime disqualification. Williams filed a petition for judicial review with the district court and the district court affirmed ITD's final order. Williams timely appealed.

<h1 style="text-align:center">II.</h1>

<h2 style="text-align:center">DISCUSSION</h2>

On appeal, Williams argues that the administrative disqualification of his CDL, pursuant to Idaho Code § 49-335, violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 13 of the Idaho Constitution. Specifically, Williams asserts that, despite being civil in nature, the lifetime disqualification of his CDL is so punitive as to effectively be a criminal penalty and thus he has been subjected to multiple punishments and convictions in violation of the Double Jeopardy Clause. In addition, Williams argues that I.C. § 18-8002 is unconstitutional as applied to him under the void-for-vagueness doctrine because the statute failed to inform him that a failed breath test would affect his CDL. Williams also argues that ITD violated his substantive due process rights as his lifetime disqualification bears no rational relationship to the legislative objective of I.C. § 49-335. Lastly, Williams argues that his lifetime CDL disqualification is so punitive that it is the equivalent to either an excessive fine or cruel and unusual punishment, or both.

The Idaho Administrative Procedure Act (IDAPA) governs the review of ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court, acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent

evidence in the record. *Urrutia v. Blaine Cnty., ex rel. Bd. of Comm'rs*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall,* 137 Idaho at 340, 48 P.3d at 669.

This Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67-5279(3).

## A.    Double Jeopardy

Williams argues that he was subjected, in consecutive prosecutions, to multiple convictions and punishments for the same offense. Whether a defendant's prosecution complies with the constitutional protection against being placed twice in jeopardy is a question of law over which we exercise free review. *State v. Santana*, 135 Idaho 58, 63, 14 P.3d 378, 383 (Ct. App. 2000). We initially note that Williams does not claim that the Double Jeopardy Clause of the Idaho Constitution provides any broader protection than that of the United States Constitution. Therefore, we will analyze this claim under the double jeopardy provisions of the United States Constitution. *See State v. Talavera*, 127 Idaho 700, 703, 905 P.2d 633, 636 (1995); *State v. McKeeth*, 136 Idaho 619, 624, 38 P.3d 1275, 1280 (Ct. App. 2001). The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The clause affords a defendant three basic protections. It protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple criminal punishments for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229 (1994); *McKeeth*, 136 Idaho at 622, 38 P.3d at 1278.

Williams argues that he was subjected to multiple convictions and punishments for the same offense because, although civil in nature, the lifetime CDL disqualification is so punitive in form and effect as to be transformed into a criminal punishment for double jeopardy purposes. In 1995, the Idaho Supreme Court held that a defendant who was convicted of DUI and whose

3

driver's license was subsequently suspended for ninety days pursuant to I.C. § 18-8002A was not subjected to multiple convictions and punishments in violation of the Double Jeopardy Clause of the United States and Idaho Constitutions. *Talavera*, 127 Idaho at 705, 905 P.2d at 638. Talavera argued that the ninety-day license suspension, under I.C. § 18-8002A, was so punitive that it should be considered a criminal punishment for double jeopardy purposes. The Court held that the proper inquiry for determining whether a civil sanction rises to the level of a criminal punishment for double jeopardy purposes is whether the sanction, as applied, bears a rational relationship to a legitimate remedial purpose. *Id.* at 705, 905 P.2d at 638. The Court noted that the remedial purpose of I.C. § 18-8002A is to provide maximum safety to the public by getting drivers who fail blood alcohol concentration tests off public roadways immediately. *Id.* The Court held that, because the driver's license suspension was not disproportionate to the statute's legitimate remedial goal, it did not rise to the level of a criminal punishment and was not a violation of double jeopardy. *Id.*

In *Buell v. Idaho Dep't of Transp.*, 151 Idaho 257, 254 P.3d 1253 (Ct. App. 2011), this Court analyzed a one-year CDL disqualification in the wake of the U.S. Supreme Court establishing a new framework for double jeopardy claims. This Court stated:

> Subsequent case law has, however, called the analytical method utilized in *Talavera* into question. In conducting its analysis, the *Talavera* Court relied almost exclusively on *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), *abrogated by Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). Under the Double Jeopardy Clause, "a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Halper*, 490 U.S. at 448-49, 109 S. Ct. at 1902, 104 L. Ed. 2d at 501-02.
>
> In 1997, however, the United States Supreme Court disavowed the double jeopardy analysis used in *Halper*. *Hudson*, 522 U.S. at 101-02, 118 S. Ct. at 494-95, 139 L. Ed. 2d at 460-61. In *Hudson*, the United States Supreme Court held that *Halper's* deviation from traditional double jeopardy doctrine was ill-considered and that its test had proved unworkable. *Hudson*, 522 U.S. at 101-02, 118 S. Ct. at 494-95, 139 L. Ed. 2d at 460-61. The *Hudson* Court substituted a multi-part test for determining whether a civil sanction rises to the level of punishment for double jeopardy purposes. First, a court must ask whether the legislature indicated either expressly or impliedly that the statute should be considered criminal or civil in nature. *Id.* at 99, 118 S. Ct. at 493, 139 L. Ed. 2d at 458-59. In cases where the legislature has indicated an intention to establish a civil penalty, there must be further inquiry to determine whether the statutory scheme was so punitive as to transform what was clearly intended as a civil

4

remedy into a criminal penalty. *Id.* In making this determination, the court should consider the following factors, including whether: (1) the sanction involves an affirmative disability or restraint; (2) the sanction has historically been regarded as punishment; (3) the sanction comes into play only on a finding of scienter; (4) the sanction's operation will promote the traditional aims of punishment, retribution, and deterrence; (5) the behavior to which the sanction applies is already criminal; (6) an alternative purpose to which the sanction may rationally be connected is assignable to it; and (7) the sanction appears excessive in relation to the alternative purpose assigned. *Id.* at 99-100, 118 S. Ct. at 493-94, 139 L. Ed. 2d at 458-60. Buell argues that, rather than follow *Halper* and *Talavera*, we should employ the analysis used in *Hudson*. Because *Talavera* relied almost exclusively on *Halper* and because *Halper* has been abrogated by *Hudson*, we will apply the *Hudson* analysis in this case.

*Buell*, at 261-62, 254 P.3d at 1257-58 (internal footnotes omitted). The *Buell* Court held that "[b]ased on the *Hudson* factors, . . . a one-year CDL disqualification is civil in nature and does not rise to the level of a criminal punishment for double jeopardy purposes." *Id.* at 264, 254 P.3d at 1260. However, the analysis in *Buell* does not end our inquiry because Williams argues that the lifetime disqualification, as opposed to a one-year disqualification, is a far more punitive sanction than a year-long disqualification. Therefore, we will apply the *Hudson* factors to the lifetime disqualification of I.C. § 49-335.

Under *Hudson*, we must first determine whether the Idaho legislature intended for the lifetime CDL disqualification under I.C. § 49-335[1] to be civil or criminal. Whether a statutory scheme is civil or criminal is a question of statutory construction. *Smith v. Doe*, 538 U.S. 84, 92, (2003). To determine the legislature's intention, consideration should be given to the statute's text and structure. *Id.* Although the text of I.C. § 49-335 does not expressly state whether the statute is civil or criminal, the Idaho legislature's intention to create a civil proceeding is evidenced by its placement of the CDL disqualification provisions within the motor vehicle code instead of the criminal code. *See Kansas v. Hendricks*, 521 U.S. 346, 361 (1997); *Buell*, 151 Idaho at 262, 254 P.3d at 1258. The Idaho legislature had a civil remedial purpose in creating the statute. *Buell*, 151 Idaho at 262, 254 P.3d at 1258. As noted above, the purpose of I.C. § 49-

---

[1]    Idaho Code § 49-335(4) states:
    A person is disqualified for the period of time specified in 49 CFR part 383 if found to have committed two (2) or more of any of the offenses specified in subsection (1) or (2) of this section, or any combination of those offenses, arising from two (2) or more separate incidents.

335 is to provide for public safety through the removal of problem drivers from the road by license disqualification. Review of the statute suggests that the legislature did not seek to create anything other than a civil scheme designed to protect the public from harm. In addition, when the legislature gives authority to an administrative agency we will presume that it intended to provide for a civil sanction. *See Hudson*, 522 U.S. at 103. Here, the authority to suspend a CDL was conferred by the legislature upon the ITD--a state agency. Therefore, we hold the legislature intended CDL disqualification under I.C. § 49-335 to be a civil sanction.

Nevertheless, we must also inquire whether the statutory scheme governing the lifetime CDL disqualification imposed upon Williams was so punitive either in purpose or effect as to transform what was intended as a civil remedy into a criminal penalty. To make this determination, we must weigh the seven factors laid out in *Hudson*. It is important to note that these factors must be considered in relation to the statute on its face and that only the clearest proof will suffice to transform what has been denominated a civil remedy into a criminal penalty. *Hudson*, 522 U.S. at 100. First, we note that the disqualification of a CDL pursuant to I.C. § 49-335 does not impose an affirmative disability or restraint that approaches criminal punishment on the license holder. In *Hudson*, the petitioners were bank officers who were criminally convicted for misapplication of bank funds. Subsequent to their criminal convictions, the petitioners were also banned from working in the banking industry and were subject to monetary penalties. *Id.* at 97. In holding that the additional civil penalties did not rise to the level of criminal punishment for double jeopardy purposes, the *Hudson* Court noted that, while the petitioners were prohibited from making their livelihoods in the banking industry, the sanctions were nothing approaching the infamous punishment of imprisonment. *Id.* at 104. Similarly, while a lifetime CDL disqualification prevents the holder of a CDL from making his or her livelihood from driving commercial vehicles, it does not impose a restraint that approaches the punishment of imprisonment. *See id.*

Second, we must consider whether driver's license suspensions have been regarded as punishment. Idaho appellate courts have not viewed driver's license suspensions as punishment, no matter the length of the suspension. *See Talavera*, 127 Idaho at 705, 905 P.2d at 638; *Buell*, 151 Idaho at 263, 254 P.3d at 1259; *McKeeth*, 136 Idaho at 623, 38 P.3d at 1279; *State v. Gusman*, 125 Idaho 810, 812-13, 874 P.2d 1117, 1119-20 (Ct. App. 1993). *See also United*

6

*States v. Roberts*, 845 F.2d 226, 228 (9th Cir. 1988). Therefore, we hold that a CDL disqualification has not historically been regarded as punishment.

Third, we must consider whether a lifetime CDL disqualification comes into play only on a finding of scienter. Under I.C. § 49-335(4), the prerequisite for a lifetime CDL disqualification is a conviction of "two (2) or more of any of the offenses specified in subsection (1) or (2) of this section, or any combination of those offenses, arising from two (2) or more separate incidents." The prerequisite for a CDL disqualification under I.C. § 49-335(1)(a) is a DUI, and under I.C. § 49-335(2) a refusal or failure of a BAC test. There is no scienter required for a disqualification under either subsection.

Fourth, we must consider whether the behavior attached to the lifetime CDL disqualification is already a crime. We note that the conduct sanctioned in the instant case is also criminalized by I.C. § 18-8004. However, this, by itself, is insufficient to transform Williams' lifetime CDL disqualification into a criminal punishment. *See Buell*, 151 Idaho at 263, 254 P.3d at 1259 (examining a one-year CDL disqualification); *McKeeth*, 136 Idaho at 624, 38 P.3d at 1280 (same). A statute that has some connection to a criminal violation is, by itself, far from the clearest proof necessary to show that a sanction is criminal. *See Buell*, 151 Idaho at 263, 254 P.3d at 1259; *McKeeth*, 136 Idaho at 624, 38 P.3d at 1280.

Fifth, we must consider whether a lifetime CDL disqualification promotes the traditional aims of punishment, retribution, and deterrence. The Court in *State v. Ankney*, 109 Idaho 1, 5, 704 P.2d 333, 337 (1985), held that while a driver does have a substantial right in his or her driver's license, the State's interest in preventing intoxicated persons from driving far outweighs the individual's interest, especially because the individual is entitled to a prompt post-seizure hearing. This holding supports the conclusion that the State has a strong remedial and nonpunitive reason for suspending or disqualifying drivers' licenses. We recognize that a lifetime CDL disqualification will have a deterrent effect, which is a traditional goal of criminal punishment. We also acknowledge that a lifetime ban will have a stronger deterrent effect than that of a one-year disqualification. However, deterrence may serve civil as well as criminal goals. *Hudson*, 522 U.S. at 105; *McKeeth*, 136 Idaho at 624, 38 P.3d at 1280. For example, the sanctions at issue here, while intended to deter future wrongdoing, also serve to provide for the safety of the public-at-large. To hold that the mere presence of a deterrent purpose renders such sanctions criminal for double jeopardy purposes would severely undermine the State's ability to

engage in effective regulation of driver's licenses. Therefore, we hold the mere presence of a deterrent effect is insufficient to render a lifetime CDL disqualification criminal.

Sixth, we must consider whether there is a purpose, other than punishment, that could be assigned to the lifetime CDL disqualification and whether the disqualification is excessive in relation to the alternative purpose assigned to it. As noted above, the purpose of I.C. § 49-335 is to remove problem drivers from the road through disqualification. Statement of Purpose, SB 1001 (1989). The right of a citizen to operate a motor vehicle is substantial, but it is also subject to reasonable regulation by the State in the exercise of its police powers. *Talavera*, 127 Idaho at 705, 905 P.2d at 638. When a person is approved for a CDL, he or she agrees to abide by certain conditions and regulations. *Id.* The commercial driving industry is highly regulated because of the size and weight of commercial vehicles and the heightened danger they pose to the public should they be misused. Impaired commercial drivers pose a unique danger to the public because of the type of vehicles they operate. Therefore, disqualification of a CDL indicates only that the holder has failed to comply with the agreed conditions, not that he or she is being punished for a particular act. *Id.*

Williams argues that the lifetime disqualification "is far more punitive in extent and impact than even the suspension of a class D driver's license." According to Williams, a lifetime CDL disqualification is excessive in relation to the alternative purpose assigned to it. Williams does not cite to any case for this contention. Understandably, the lifetime CDL disqualification is more significant than the one-year disqualification because lifetime disqualifications arise from two violations, whereas one-year disqualifications occur after one violation. Although the lifetime disqualification is significantly greater than that of the one-year disqualification, we cannot say it is excessive in relation to the overall purpose of protecting public safety. A second offense is cause for significantly greater concern for public safety. Moreover, I.C. § 49-335 requires a person to be disqualified for the period of time specified in 49 C.F.R. § 383, in this instance, lifetime.[2] Therefore, the lifetime disqualification from driving a commercial vehicle is

---

[2]    We note that 49 C.F.R. § 383.51(a)(6) prescribes that "[a] State may reinstate any driver disqualified for life for offenses described in paragraphs (b)(1) through (8) of this section (Table 1 to § 383.51) after 10 years, if that person has voluntarily entered and successfully completed an appropriate rehabilitation program approved by the State." Williams' lifetime CDL disqualification may be reduced to a ten-year disqualification, if he participates in a rehabilitation program, an aspect that lessens the severity of the disqualification.

8

not disproportionate to the statute's legitimate remedial goal of keeping problem drivers with multiple alcohol violations off the roadways. Based on the *Hudson* factors, we hold that a lifetime CDL disqualification is civil in nature and does not rise to the level of a criminal punishment for double jeopardy purposes.

**B.      Void for Vagueness**

Williams claims that I.C. § 18-8002 is vague as applied to his case and "[a]t no time [was] he informed that his commercial driver's license would be disqualified for the rest of his life before he took the breath test that resulted in the action taken against him in this case." Where the constitutionality of a statute is challenged, we review the lower court's determination de novo. *State v. Korsen*, 138 Idaho 706, 711, 69 P.3d 126, 131 (2003); *State v. Martin*, 148 Idaho 31, 34 218 P.3d 10, 13 (Ct. App. 2009). The party attacking a statute on constitutional grounds must overcome a strong presumption of validity. *Korsen*, 138 Idaho at 711, 69 P.3d at 131; *Martin*, 148 Idaho at 34, 218 P.3d at 13. Appellate courts are obligated to seek an interpretation of a statute that upholds its constitutionality. *Korsen*, 138 Idaho at 711, 69 P.3d at 131; *Martin*, 148 Idaho at 34, 218 P.3d at 13.

Due process requires that all be informed as to what the State commands or forbids and that persons of ordinary intelligence not be forced to guess at the meaning of the law. *Smith v. Goguen*, 415 U.S. 566, 574 (1974); *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). The void-for-vagueness doctrine applies to statutes employing civil sanctions for violations, but greater tolerance is permitted when addressing a civil or non-criminal statute as opposed to a criminal statute. *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498-99 (1982); *Cowan v. Board of Comm'rs of Fremont County*, 143 Idaho 501, 513-14, 148 P.3d 1247, 1259-60 (2006).

A statute may be challenged as unconstitutionally vague on its face or as applied to a complainant's conduct. *Korsen*, 138 Idaho at 712, 69 P.3d at 132; *Martin*, 148 Idaho at 35, 218 P.3d at 14. Here, Williams does not make a facial challenge, but contends only that the statute is impermissibly vague as applied to him. To succeed on an "as applied" vagueness challenge, a complainant must show that the statute failed to provide fair notice that the complainant's specific conduct was prohibited or failed to provide sufficient guidelines such that police had unbridled discretion in determining whether to charge the complainant. *Martin*, 148 Idaho at 35, 218 P.3d at 14.

9

Williams argues that he was not adequately notified of the consequences of submitting to the tests as required by I.C. § 18-8002. In denying Williams' claim that the statute was void for vagueness, the district court stated:

> This issue was recently addressed, in part, by the Idaho Supreme Court in *Wanner v. ITD*, 150 Idaho 164, 244 P.3d 1250 (2011), wherein the Idaho Supreme Court held that a § 18-8002A suspension governs driving privileges *in toto*, while an I.C. § 49-335 suspension applies to a particular subset of driving privileges, i.e. the right to operate a commercial vehicle. Further the Idaho Court of Appeals addressed a similar argument in *Buell*, *supra*. There, Buell argued that his due process rights were violated because I.C. §§ 18-8002, 18-8002A, and 49-335 are ambiguous and did not adequately notify him of when his CDL disqualification would begin. The Idaho Court of Appeals held that I.C. §§ 18-8002 and 18-8002A are criminal statutes and address suspension of non-commercial licenses. Further, I.C. § 49-335 prescribes additional consequences that result from a motorist's refusal to take or the failure of an evidentiary test. The *Buell* court held that a disqualification under I.C. § 49-335 is in addition to a suspension under I.C. §§ 8002 and 8002A.
>
> A holder of a CDL is presumed to have knowledge of the laws governing CDLs. *Wilson v. State*, 133 Idaho 874, 880, 993 P.2d 1205, 1211 (Ct. App. 2000). Williams argues that at no time was he informed that his CDL would be suspended for his lifetime if he failed the breath testing. The record shows that Williams was provided the required notifications as required by I.C. § 18-8002A.
>
> Williams was presumed to know that the disqualification of his CDL was in addition to any suspensions he received under I.C. §§ 18-8002 or 18-8002A. Williams was also presumed to know the consequences if he was convicted of any of the offenses listed in I.C. § 49-335(1) or refused to submit to or failed an evidentiary test pursuant to I.C. § 49-335(2). He was also presumed to know that his CDL would be suspended for life for two or more major events as specified in I.C. § 49-335(1) or (2).
>
> This Court finds that I.C. §§ 18-8002, 18-8002A and 49-335 are not void for vagueness. There is no legal requirement that an arresting officer provide notice of all the collateral effects that a breath test failure will have on one's CDL endorsement. As a holder of a CDL, Williams was presumed to have such knowledge.

When called upon to interpret a statute, we begin with an examination of its literal words. *State, Dep't of Health Welfare ex rel. Lisby v. Lisby*, 126 Idaho 776, 779, 890 P.2d 727, 730 (1995); *McKeeth*, 136 Idaho at 628, 38 P.3d at 1284; *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). The statutory language is to be given its plain, obvious, and rational meaning. *Lisby*, 126 Idaho at 779, 890 P.2d at 730. A statute is to be construed as a whole without separating one provision from another. *State v. Olson*, 138 Idaho 438, 440, 64 P.3d 967, 969 (Ct. App. 2003). In attempting to discern and implement the intent of the legislature, a court

10

may seek edification from the statute's legislative history and contemporaneous context at enactment. *Id.* However, if the statutory language is clear and unambiguous, a court need merely apply the statute without engaging in any statutory construction. *Id.*

In this case, we agree with the district court that the statute's language specifies what conduct is prohibited and the consequences of participating in such conduct with sufficient clarity and definiteness that a person of common intelligence could understand. Because Williams is presumed to have knowledge that I.C. § 49-335 governs CDL disqualification, his argument that I.C. § 18-8002 did not inform him of the CDL consequences of a failed test are without merit.

Additionally, I.C. § 49-335 is not ambiguous. Idaho Code § 49-335(4) states:

A person is disqualified for the period of time specified in 49 CFR part 383 if found to have committed two (2) or more of any of the offenses specified in subsection (1) or (2) of this section, or any combination of those offenses, arising from two (2) or more separate incidents."

A person with common and ordinary intelligence would know that I.C. § 49-335 provides that 49 C.F.R. § 383 will specify the length of CDL disqualification for individuals with two DUI violations. Moreover, 49 C.F.R. § 383.51 is not ambiguous. That regulation states " [f]or a second conviction or refusal to be tested in a separate incident of any combination of offenses in this Table while operating a non-CMV, a CLP or CDL holder must be disqualified from operating a CMV for Life."[3] *See* Department of Transportation Driver Disqualifications and Penalties, 49 C.F.R. § 383.51 (2012).[4] The regulation plainly sets forth what conduct is prohibited and the length of disqualification for engaging in such conduct; therefore, it is not unconstitutionally vague as applied to Williams.

---

[3]    The table in 49 C.F.R. § 383.51 lists various offenses on the left side of the table and the number of violations, as well as the type of vehicle driven at the time of the offense, at the top. The numbers within the table detail the length of the respective disqualifications. For two violations of "[b]eing under the influence of alcohol as prescribed by State law" the disqualification is for life. 49 C.F.R. § 383.51(b)(1).

[4]    The quoted portion of the regulation has not been amended since the time Williams was convicted of his first DUI in 2008.

## C. Substantive Due Process

Williams claims that applying I.C. § 49-335 to his case "bears no rational or reasonable relationship to any legitimate legislative objective." The United States and Idaho Constitutions protect against state deprivation of a person's "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; IDAHO CONST. art. I, § 13. In order to prevail on a substantive due process claim, the state action that deprives a person of life, liberty, or property must be arbitrary, capricious, or without a rational basis. *Pace v. Hymas*, 111 Idaho 581, 586, 726 P.2d 693, 698 (1986). Conversely, a substantive due process violation will not be found if the state action "bear[s] a reasonable relationship to a permissible legislative objective." *McNeely v. State*, 119 Idaho 182, 189, 804 P.2d 911, 918 (Ct. App. 1990) (citing *State v. Reed*, 107 Idaho 162, 167, 686 P.2d 842, 847 (Ct. App. 1984)).

In *Buell*, this Court stated "the remedial purpose of I.C. § 49-355 is to provide for the safety of the public by removing problem drivers . . . through disqualification." *Buell*, 151 Idaho at 261, 254 P.3d at 1257 (citing Statement of Purpose, SB 1001 (1989)). Here, as in *Buell*, the reason for the deprivation is public safety, one of the legislature's highest priorities. Removing a problem driver from the roadways in order to protect public safety is rationally related to a lifetime CDL disqualification for driving offenses occurring while driving a non-commercial vehicle. Williams has failed to demonstrate that I.C. § 49-335 may be characterized as arbitrary or that the statute bears no rational relationship to any legitimate legislative objective.

## D. Cruel and Unusual Punishment

Williams claims that the lifetime disqualification of his CDL is tantamount to an excessive fine or cruel and unusual punishment, or both. The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Though the Excessive Fines Clause of this amendment has not been explicitly applied to the States,[5] Article I, Section 6 of the Idaho

---

[5] The United States Supreme Court has yet to hold that the Excessive Fines Clause is applicable to the States, although it has applied the prohibition in the Eighth Amendment against cruel and unusual punishment. *Robinson v. California*, 370 U.S. 660, 667 (1962). Nonetheless, many state courts function under the assumption that states are subject to the Excessive Fines Clause, *see Baze v. Rees*, 553 U.S. 35, 47 (2008) (stating in dicta the whole of the Eighth Amendment is applicable to the States), and in at least one Idaho case, our courts have also

12

Constitution contains an Excessive Fines Clause that is identical. While federal constitutional standards do not dictate a particular result under a similar provision in the Idaho Constitution, *see State v. Agundis*, 127 Idaho 587, 591-92, 903 P.2d 752, 756-57 (Ct. App. 1995), where there is nothing to suggest that Idaho's Constitution provides greater protection than the United States Constitution, we seriously consider federal constitutional standards in determining the parameters of our own similar provisions. *State v. Mubita*, 145 Idaho 925, 932, 188 P.3d 867, 874 (2008), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011). In the context of other Eighth Amendment questions, the Idaho Supreme Court has generally held that the equivalent provisions in the Idaho Constitution provide co-extensive protection. *See, e.g.*, *Idaho Dep't of Law Enforcement v. Free*, 126 Idaho 422, 423-24, 885 P.2d 381, 382-83 (1994); *State v. Brown*, 121 Idaho 385, 394, 825 P.2d 482, 491 (1992).

The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for an offense. *United States v. Bajakajian*, 524 U.S. 321, 328 (1998); *Austin v. United States*, 509 U.S. 602, 609-10 (1993). Forfeitures are payments in kind and thus, are fines if they constitute punishment for an offense. *Bajakajian*, 524 U.S. at 328. A civil sanction that cannot fairly be said to solely serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment. *Austin*, 509 U.S. at 610. If the forfeiture is grossly disproportionate to the gravity of the offense, it is unconstitutional. *Bajakajian*, 524 U.S. at 337.

In *Nez Perce Cnty. Prosecuting Attorney v. Reese*, 142 Idaho 893, 136 P.3d 364 (Ct. App. 2006) this Court stated:

> In considering the gravity of the offense, factors for courts' consideration include the nature and extent of the crime, whether the violation was related to other criminal activities, the other penalties that may be imposed for the violation, and the extent of harm caused. *See $100,348.00*, 354 F.3d at 1122; *Ahmad*, 213 F.3d at 816; *In re: 319 E. Fairgrounds Dr., 205 Ariz. 403*, 71 P.3d 930, 936 (App. 2003). Judgments about appropriate punishment for an offense belong in the first instance to the legislature. *Bajakajian*, 524 U.S. at 336, 118 S. Ct. at 2037, 141 L. Ed. 2d at 330. Thus, among the most important factors when determining the

---

proceeded under this assumption. *See Idaho Dep't of Law Enforcement v. Free*, 126 Idaho 422, 423 n.2, 885 P.2d 381, 382 n.2 (1994).

gravity of the offense are other penalties authorized by the legislature. *See Wagoner County*, 278 F.3d at 1100. Additionally, the culpability of the offender should be examined specifically instead of examining the gravity of the crime in the abstract. *Thurman Street*, 164 F.3d at 1197. Courts may take into account the extent of both the defendant's and the property's roles in the offense, the nature and scope of the illegal operation at issue, the personal benefit reaped by the defendant, and the value of the contraband involved in the offense. *See Wagoner County*, 278 F.3d at 1101.

To determine the proportionality of the forfeiture, relevant factors include, but are not limited to, the fair market value of the property, the intangible or subjective value of the property, and the hardship to the defendant. *See United States v. 25445 Via Dona Christa*, 138 F.3d 403, 409 (9th Cir. 1998); *State v. 633 East 640 Nor*th, 994 P.2d 1254, 1258 (Utah 2000). Courts have considered the property's character as a residence and the effect of forfeiture on innocent occupants or children when evaluating the subjective value of the property or the harshness of the forfeiture. *See 45 Claremont St.*, 395 F.3d at 6; *Dodge Caravan*, 387 F.3d at 763; *633 East 640 North*, 994 P.2d at 1258-59. Courts may also take into account any other sanctions imposed upon the defendant by the sovereign seeking forfeiture. *See Wagoner County*, 278 F.3d at 1101. Additionally, the effect of forfeiture on the defendant's family or financial circumstances is relevant. *See 25445 Via Dona Christa*, 138 F.3d at 409; *County of Nassau v. Canavan*, 1 N.Y.3d 134, 770 N.Y.S.2d 277, 802 N.E.2d 616, 622 (2003); *633 East 640 North*, 994 P.2d at 1260.

*Reese*, 142 Idaho at 899-900, 136 P.3d at 370-71.

Williams argues that the lifetime disqualification, when viewed as a civil sanction, serves only retributive and deterrent purposes. Williams also contends that the lifetime disqualification is disproportionate to the gravity of the offense, at least partially, because of the lack of a nexus between the conduct, failing a breath test twice while driving on his Class D license, and the consequence--a lifetime CDL disqualification. The district court determined that a lifetime CDL disqualification for failing two evidentiary tests was not cruel and unusual punishment. First, the district court determined that the sanction serves a remedial purpose. The district court also held that Williams' CDL loss "does not create such an extreme hardship that it rises to the level of cruel and unusual punishment." The district court noted that Williams only lost certain employment, but retains the ability to seek employment that does not involve a CDL.

We agree that the sanction serves a remedial purpose and that Williams' CDL disqualification is not grossly disproportionate to the seriousness of the offense. DUI is a serious offense and, as such, the Idaho legislature drafted I.C. § 49-335 to remove problem drivers from the road and protect the public. The fact that Williams was operating a noncommercial vehicle

14

at the time of each of his DUIs does not alter the relationship or nexus between the offenses and the basis for the sanction. Williams' culpability in receiving his lifetime CDL disqualification cannot be overstated: Williams chose to drive while impaired, endangering the public on two separate occasions. If Williams wanted to retain his CDL, he could have abided by the conditions placed on his CDL. Williams contends that the lifetime CDL disqualification is at least a partial forfeiture of his "right to the pursuit of happiness through his choice of employment and career." Before his first DUI, Williams was employed as a heavy equipment mechanic. After his one-year CDL disqualification, he was able to find employment as a bus mechanic and was even able to find employment as a mechanic after getting his second DUI. Williams has not lost the ability to work as a mechanic. He has not lost his ability to drive a noncommercial vehicle. The lifetime CDL disqualification has only affected Williams' ability to operate a commercial vehicle and hold a job that requires a CDL. That consequence does not amount to cruel and unusual punishment and is not grossly disproportionate to the gravity of his offense--receiving two DUIs.

### III.

### CONCLUSION

A lifetime CDL disqualification under I.C. § 49-335 is civil in nature and does not rise to the level of a criminal punishment for double jeopardy purposes. Williams is presumed to know the laws governing his CDL and thus cannot complain that I.C. § 18-8002 is unconstitutionally vague as applied to him. Moreover, I.C. §§ 18-8002 and 49-335 are not ambiguous, and as such are not void for vagueness. Williams has not been denied substantive due process because his lifetime CDL disqualification was rationally related to the legitimate legislative objective of protecting public safety. Lastly, the lifetime CDL disqualification serves a remedial purpose and is not grossly disproportionate to the gravity of Williams' two DUIs and thus, does not constitute cruel and unusual punishment. The district court's decision affirming the hearing officer's decision disqualifying Williams from holding a commercial driver's license is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**